Karra J. Porter, 5223
J.D. Lauritzen, 14237
Jacob W. Macfarlane, 13287
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah  84111
Telephone: (801) 323-5000
Karra.Porter@chrisjen.com
Jake.Macfarlane@chrisjen.com

Patrick A. Shea, 2929
PATRICK A. SHEA, P.C.
252 South 1300 East, Suite A
Salt Lake City, UT 84102
Telephone: (801)852-0949
pas@patshealaw.com
*Attorneys for Plaintiff Rosalie Chilcoat*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ROSALIE CHILCOAT, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SAN JUAN COUNTY, a political subdivision of the state of Utah; KENDALL G. LAWS, and ZANE ODELL,<br><br>Defendants. | **COMPLAINT**<br><br>**AND JURY DEMAND**<br><br>Civil No.<br><br>District Judge |

Plaintiff Rosalie Chilcoat hereby complains against the defendants as alleged below.

**PRELIMINARY STATEMENT AND INTRODUCTION**

Under the constitution, citizens have the right to express political viewpoints without retaliation by the government.  They have the right not to be seized by the government, or persons acting on behalf of the government, without probable cause.  They have the right not

to have criminal charges filed against them based upon factual misrepresentations.  In the case of Rose Chilcoat, all of these rights were violated.

Defendant Zane Odell has long disliked Rose Chilcoat for her political viewpoints, and for prior inquiries she had made to the Bureau of Land Management relating to his operations.  Among other things, Ms. Chilcoat was associated with an organization called Great Old Broads for Wilderness, whose positions on the environment and public lands were opposed by Odell.

On April 3, 2017, Ms. Chilcoat was detained by Odell – acting with, and at the direction of, the San Juan County Sheriff's Office – without probable cause to believe that she had committed a crime.  Odell then publicly accused Ms. Chilcoat of attempting to kill his cattle, without any evidence that Ms. Chilcoat had done any such thing.  As part of his effort to procure criminal charges against Ms. Chilcoat, Odell represented in a written statement that he had seen two sets of tracks leading to and from a gate that had been closed, which was false.

In addition to charges arising from Odell's allegations, another felony charge was filed against Ms. Chilcoat for alleged retaliation against a witness.  This charge was based solely upon factual misrepresentations by defendant Laws, acting as a complaining witness.  Upon information and belief, Laws made such misrepresentations in retaliation for Ms. Chilcoat's political viewpoints, including her earlier public support for criminal prosecution of a friend of Laws, (then-San Juan Commissioner) Phil Lyman.

Ms. Chilcoat was ultimately vindicated in all respects.  All charges against her were dropped.  It took more than a year, however, after Ms. Chilcoat was forced to incur

substantial defense costs fighting the fabricated allegations.  The actions against Ms. Chilcoat violated her constitutional rights and cost her a substantial amount of money, for which this lawsuit seeks redress.

## PARTIES

1.  Plaintiff Rosalie ("Rose") Chilcoat is an individual who resides in the State of Colorado.

2.  Defendant San Juan County is a political subdivision organized under the laws of the state of Utah.

3.  Defendant Kendall G. Laws is an individual who resides in San Juan County, State of Utah.

4.  Defendant Zane Odell is an individual who resides in the State of Colorado.

## JURISDICTION AND VENUE

5.  This action raises questions under the Constitution of the United States and 42 U.S.C. § 1983, and this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over the Second Claim for Relief under 28 U.S.C. § 1367.

6.  Venue is proper in this Court under 28 U.S.C. §§ 1391(a)(2) and 1391(b), as the events or omissions alleged occurred in San Juan County, Utah.

## FACTUAL BACKGROUND

7.  On April 3, 2017, Ms. Chilcoat was a passenger in a vehicle traveling on a county road crossing federal and state lands in San Juan County.

8.      Defendant Odell, along with two other men acting at his instance or direction, blocked the car's movement, positioning a truck in front of the car and preventing Ms. Chilcoat and the driver (Ms. Chilcoat's husband) from leaving.

9.      Odell and his cohorts refused to answer when Ms. Chilcoat's husband asked repeatedly why the men were detaining them.  Due in part to the size of the men, their refusal to explain their actions, their hostility and threats, Ms. Chilcoat was afraid for her safety.

10.      Odell called the San Juan County Sheriff's Office, and a deputy (Deputy Begay) arrived 10 or more minutes later.

11.      Unknown to Ms. Chilcoat, two days earlier, Odell had called the Sheriff's Office to report that someone had shut a gate on a corral that contained a water trough for cattle.[1]  Odell had advised Sheriff's Sgt. Wilcox that, but for a 10-foot gap in the fence, his cattle might have been deprived of water by the gate closure.

12.      On April 1, Sgt. Wilcox had come to the scene.  Odell told Sgt. Wilcox that he had a trail camera, and showed Wilcox a couple of "fuzzy" images of a trailer and partial license plate.

13.      On April 1 or 2, 2017, Odell advised Sgt. Wilcox that he had found the trailer parked at Sand Island Campground.  "We got them," he told Wilcox.  When Wilcox questioned the campers, he determined that they were an innocent couple from Minnesota.

14.      On April 3, 2017, Odell and two other men stopped a vehicle in which Ms. Chilcoat was riding.

---

[1] Odell has a permit to graze cattle on U.S. Bureau of Land Management (BLM) and Utah School and Institutional Trust Land Administration (SITLA) land in parts of San Juan County.

4

15.     During this seizure of Ms. Chilcoat, Odell was acting in concert with state actors (the Sheriff's Office) and as a state actor.  Facts supporting this inference include:

a.     The initial investigation (on April 1, 2017) of the gate closing was conducted jointly by Odell and Sheriff's Sgt. Wilcox.

b.     When Odell had earlier exclaimed "We got 'em" in connection with the Minnesota couple, Sgt. Wilcox understood the "we" to include himself.

c.     On April 3, 2017, Odell called San Juan County Sheriff's Office Dispatch to "let them know *we* have the vehicle detained on Lime Ridge that *we* were all looking for." (emphasis added).

d.     Dispatch is part of the San Juan County Sheriff's Office and performs a law enforcement function for the County.

e.     Before Deputy Begay arrived, Odell said to Ms. Chilcoat, "You're going to jail," and similar threats.

f.     Sheriff's Office Dispatch directed Odell to continue detaining Ms. Chilcoat for the sheriff's deputy (Begay).

g.     Sheriff's Office Dispatch advised Deputy Begay that Odell and another rancher Zeb Dalton were detaining Ms. Chilcoat "for" the deputy.

h.     Deputy Begay informed his supervisor, Sgt. Wilcox, that Odell had the people who owned the trailer "detained."  Sgt. Wilcox did not express any surprise or dismay, or direct that Ms. Chilcoat be released.  Instead, he directed Deputy Begay to "get the suspects information and take a statement."

i.      The interrogation on scene occurred jointly with Deputy Begay and the ranchers.

j.      Deputy Begay told Odell, "I'm not going to let them [Chilcoat and her husband] go."

k.      After Odell described running to apprehend the car in which Chilcoat was riding, Deputy Began said, "I'm glad we were able to get them."

l.      Odell told Begay, "I want to go as far as absolutely is possible. Because in their little environmental world, in their social media, the rest of them will catch on, maybe.  And leave the cowboys alone."

m.      Prior to charges being filed, Sgt. Wilcox discussed with Odell "the possible charges we were looking at."

16.      Odell had a longstanding disdain for Ms. Chilcoat.  Among other things, Ms. Chilcoat had previously raised issues with the Bureau of Land Management regarding Odell's use of the land.  Odell also disliked the viewpoints of the Great Old Broads for Wilderness, of which Ms. Chilcoat was the former associate director, and Friends of Cedar Mesa, of which she was presently on the Board of Directors.

17.      After his detention of Ms. Chilcoat, Odell falsely stated to third parties that Ms. Chilcoat had been caught "red handed" closing the gate and trying to kill his cattle. Odell's false allegations were widely publicized, and subjected Ms. Chilcoat to death threats and other excoriation.  For example, comments were posted online that included:

"Get a rope"

"Ignorant bitch"

6

"Get their plate # and get folks to follow the creeps every where and they soon will leave, we hope"

"I hope they lock this bitch up and throw away the key"

"In the old west they called it lynching, but in the old west they would have been hanged or shot that day.... The good old days..."

"I hope Zane [Odell] files a civil suit.  These cow haters do a hundred acts of vandalism that go unprosecuted for every one that is prosecuted. When she gets out of jail, I hope she has to pay Mr. O'Dell five or six mil."

18.    As part of his effort to procure criminal charges against Ms. Chilcoat, Odell misrepresented in a written statement that he saw two sets of footprints to and from the gate that was closed.  *See* April 4, 2017, witness statement (stating that he saw foot prints as "*they* closed it and leading to the water trough" and "documented *their* foot steps") (emphases added).

19.    Odell's representation that he had seen footprints for two people was a material misrepresentation.  Odell knew that he needed to claim he had seen two sets of footprints in order to implicate both Ms. Chilcoat and her husband.  This inference is further supported by the fact that Odell repeated the falsehood seven months later at a preliminary hearing, stating, *inter alia*, that "they walked around in an arch on the end of the gate as they shut it…. And then they got back to their car, drove up around, and left….  Prior to going up around the loop, there was no footprints from there they had been on the outside of the loop walking across the other tracks."

20.    Odell's intent to misrepresent Ms. Chilcoat's involvement is further evidenced by statements he made to others.  For example, shortly after the detention, Monte

Wells, who posted a video on The Petroglyph on April 4, 2017, stating that Ms. Chilcoat had been "caught red-handed harassing and endangering live stock." Wells stated:

> I got some breaking news for you. I just got the word and talked to one of the ranchers, that on Saturday their cattle had been messed with, locked out of their water source and stuff there in San Juan County at one of the ranches. Monday they're out there fixing some things, and caught the people that were messing with the cows. They have pictures of them doing it, license plates, and things like that.
>
> So they caught 'em, and it was Rose Chilcoat. Good old Rose Chilcoat from the Great Old Broads that was the director, who is now on the board of Friends of Cedar Mesa. Gotcha Rose! Ha! Who has the final laugh now?
>
> But she got caught, her and her husband, for messing with cattle, keeping 'em away from water, and I'm assuming some other things. Anyway, just got the final word on it. They did get caught, and the Sheriff's department was called.… It's a good day.

21.     Odell provided that information to Wells and/or did not correct it when Wells and others repeated the falsehood that Ms. Chilcoat had been "caught" attempting to harm cattle.

22.     On April 5, 2017, Ms. Chilcoat sent an email to Donald Hoffheins, Field Office Manager for the Monticello Field Office of the BLM. The email was accompanied by an attachment containing a zip file of photographs. The email included a statement about the events of April 3. Ms. Chilcoat wrote that she and her husband had been

> accosted by three cowboys (one of whom I believe was Zane O'Dell and one who I believe was Zeb Dalton and one unknown to me) who physically blocked our vehicle, accused us of criminal activity, threatened us with jail, and prevented our return to the highway. This was a distressing and fearful experience for both of us. My husband was falsely accused of preventing livestock from reaching water. The San Juan County Sheriff was called, responded, spoke with us and cleared us to leave. As visitors to our public lands who have long been interested in public lands grazing and have documented and reported information to the BLM and attempted to affect BLM management through proper channels, this assault and behavior by BLM permittees is unacceptable. I would like to lodge a complaint and ask that this complaint be included in these permittee's files.…

8

23.     Also, on April 5, 2017, Ms. Chilcoat's husband left a message for Sgt. Wilcox regarding the events of April 3.

24.     Having heard no response from Sgt. Wilcox, on April 7, 2017, Ms. Chilcoat's husband again attempted to reach Sgt. Wilcox.  He was told by the Sheriff's Office that Sgt. Wilcox was going to get in touch with him about his complaint.

25.     At about that same time, Sgt. Wilcox looked up information about the Great Old Broads for Wilderness, the organization with which Ms. Chilcoat had been associated.

26.     Wilcox took the statement by Odell (and one of another rancher, Zeb Dalton) to Defendant Laws (who is the San Juan County Prosecutor) on April 7, 2017, and gave Laws "the information [he] found about the Great Old Broads for Wilderness's stance on public grazing."  Laws told Wilcox he would "get the charges filed as soon as he could."

27.     Laws filed an Information against Ms. Chilcoat and her husband on April 11, 2017.  The original Information charged Ms. Chilcoat with two misdemeanors, trespassing on trust lands (animal enterprise) and false personal identity to a peace officer.[2]  Laws brought the charges in the name of the State of Utah.

28.     Six days later, on April 18, 2017, Laws filed an Amended Information.  This Information added a felony charge against Ms. Chilcoat for "Attempted Wanton Destruction of Livestock (Animal Enterprise) and another felony charge for "Retaliation Against a Witness, Victim, or Informant."

29.     On November 2, 2017, a preliminary hearing took place.  During this proceeding, the district court judge stated that he would not bind Ms. Chilcoat over on the

---

[2] The latter charge was later dismissed after the court refused to bind Ms. Chilcoat over on it.

retaliation charge based on her use of the words "accost" and "assault" in her April 5 email

to the BLM.

      30.     In an attempt to secure a bindover, Mr. Laws made this factual

misrepresentation to the court:

> So the side that – the other false allegation that is made in the complaint is with regards to the scope of these repairs to ponds and things like that. And there would be sufficient evidence to show that *some of the exhibits that were presented [by Ms. Chilcoat to the BLM] with that letter were embellished or changed, altered to make those repairs look worse than they are*. So, yeah, if you want to take the assault out, I think there's more than enough to move forward.

(Emphasis added).

      31.     This statement was utterly false.  Laws knew that no one had told him, and

he had no evidence whatsoever, that Ms. Chilcoat had altered the photographs attached to

her April 5 email.  Laws did not identify any source of this falsehood, which was wholly of

his own fabrication.

      32.     Based solely upon Laws' factual misstatement, the court stated that it would

bind Ms. Chilcoat over on the witness retaliation charge.  However, it warned Laws:

> So the only way you can proceed on that one is that – and also when people make complaints to government agencies, they have to be able to make complaints to government agencies in good faith.  So the only way, without that being considered retaliation, so the only way you can proceed on that one is a non-good faith, non-good faith information outside of the assault, the use of the word assault.  You said you want to do it and I'll let you have a crack at it.  So, I'll bind over count two, but with that warning that that's what it's going to be limited to that theory.[3]

---

[3] *See also* Response in Opposition to Defendants' Motion to Quash Bindover, April 13, 2018, p. 3 (Laws acknowledging that "[t]he Court imposed significant limitations on the theory in which the State can pursue count 2 (Retaliation against a witness, victim, or informant).  The Court will allow testimony on this charge but limited that testimony to using *photographs that misrepresent the truth* and prohibited the State from admitting evidence with regards to the language of the letter indicating that Odell used 'assaultive behavior'.") (emphasis added).

33.     On April 23, 2018, Ms. Chilcoat's defense attorneys filed a Notice of Expert Testimony by BLM and/or SITLA Experts.  According to the filing, the subject matter of the testimony would largely involve the April 5, 2017, e-mail sent by Ms. Chilcoat to the BLM, *i.e.*, the retaliation charge.

34.     On April 24, 2018, the trial court again warned Laws that, with respect to the retaliation charge, Laws would "have to show that Ms. Chilcoat used a corrupt means; such as telling the BLM something she knew was not true."

35.     One week later, on May 1, 2018, Laws dropped the retaliation charge against Ms. Chilcoat.  It is a reasonable inference that Laws dropped this charge because he knew he had never had any basis for his factual (mis)statement that Ms. Chilcoat had submitted altered photographs to the BLM, and that he had made up the allegation.

36.     Although Ms. Chilcoat is not required to prove a reason for Laws' conduct, it is a reasonable inference that he took the challenged actions in retaliation for Ms. Chilcoat's political and environmental advocacy, including Ms. Chilcoat's support for criminal charges against a friend of Laws, former County Commissioner Phillip Lyman. Evidence suggesting such a motive includes:

a.     On May 10, 2014, Laws' friend Lyman had led a protest ride of off-road vehicles through Recapture Canyon, leading to his conviction the next year on federal criminal conspiracy charges.  Ms. Chilcoat had publicly applauded the conviction in local news media, and Lyman had publicly blamed Ms. Chilcoat for his criminal conviction.  In connection with these events, Defendant Laws posted on Facebook that he was "proud" of

11

his friendship with Mr. Lyman, and asked supporters of Lyman's criminal prosecution not to post that "crap" on his Facebook page.

b.  Charges were not filed until after Sgt. Wilcox had given Laws a copy of the Great Old Broads website pages and related information about Ms. Chilcoat's involvement with the organization. Sgt. Wilcox testified that he reviewed the website a "couple of times."

c.  There is no other rational explanation for why Laws would make such a blatant factual misrepresentation.

37.  Laws' factual misrepresentation was material. As stated above, the misrepresentation was the sole basis upon which the prosecution was able to obtain a bindover on the witness retaliation charge.

38.  By making a factual misstatement for the purpose of obtaining or maintaining a criminal charge, Laws was performing a function equivalent or analogous to that of a complaining witness. Laws was not evaluating evidence; he was fabricating evidence and/or falsely representing that he had evidence when he knew that he did not. Accordingly, his actions are not within the scope of prosecutorial immunity.

39.  Alternatively, if Defendant Laws did not wholly fabricate the statement that the photographs submitted by Ms. Chilcoat had been altered, then the only source for that falsehood would have been Odell. Odell would then be a complaining witness who had made materially false statements in order to procure a felony retaliation charge against Ms. Chilcoat.

40.  Trial was set to begin on May 21, 2018.

12

41.    On May 18, 2018, on motion of Ms. Chilcoat's defense attorneys, the Utah Court of Appeals issued an order staying the trial.

42.    On July 9, 2018, the Court of Appeals heard argument on whether there was evidence to support charges against Ms. Chilcoat.  "There seems to be no case against her, no probable cause," Judge Gregory Orme stated during the hearing.  "Maybe the state will come up with something between now and (the trial), but it seems they have precious little against her…"

43.    On July 10, 2018, on its own motion, the Court of Appeals issued an Order and Sua Sponte Motion for Summary Disposition.  With respect to Ms. Chilcoat, the court wrote:

> IT IS FURTHER ORDERED that the consolidated petitions are granted insofar as they seek permission to appeal the denial of the motion to quash the bindover on the two remaining charges against Rosalie Jean Chilcoat, except that the scope of the interlocutory appeal shall be limited to the issue of whether the evidence presented at the preliminary hearing was sufficient enough to support a bindover of Chilcoat on each charge.
>
> Having granted Chilcoat permission to appeal, IT IS FURTHER ORDERED that the resulting appeal is being considered for summary disposition on the basis that it appears there is no substantial question presented that would require full briefing and plenary consideration by this court, and IT IS FURTHER ORDERED that the stay of trial court proceedings shall remain in effect as to both defendants pending resolution of this court's motion for summary disposition.
>
> In lieu of briefing, both parties must file a written response, not to exceed fifteen pages, explaining why the denial of the motion to quash the bindover order as to Chilcoat should not be summarily reversed by this court.  Responses should be filed with the clerk of the Utah Court of Appeals on or before July 31, 2018…

44.    The Court of Appeals' order required the prosecution to produce some evidence to justify the charges against Ms. Chilcoat.  If it did not do so, the trial court's bindover would be summarily reversed.

13

45.     The State acknowledged that it could not justify the prosecution of Ms. Chilcoat.  In response to the Court of Appeals' order, the State said it "elects not to defend the ruling below as to Ms. Chilcoat and therefore does not oppose this Court's motion for summary disposition."

46.     On July 19, 2018, the Court of Appeals issued an Order of Summary Reversal.  The court instructed the district court to quash the bindover on the two charges still pending against Ms. Chilcoat.  In effect, the Court of Appeals concluded that there was no evidence to support the criminal charges against Ms. Chilcoat.

47.     On August 28, 2018, the charges against Ms. Chilcoat were dismissed with prejudice.

48.     Even after dismissal of the charges, people continue to believe the false information created by Odell and Laws.  For example, in December 2018, the Free Range Report ran an article that falsely stated, "In April of 2017, Ms. Chilcoat and her husband were caught endangering livestock. Two local ranchers who were investigating suspicious activities at their corrals on Lime Ridge caught Ms. Chilcoat and her husband closing a gate in order to prevent cattle from getting to their only water source in the extremely arid region." http://www.freerangereport.com/anti-grazing-enviros-charged-with-cattle-endangerment-accuse-ranchers-of-kidnapping/ (accessed February 18, 2019).  The article was illustrated by this image:

14



49.     As a result of the defendants' unconstitutional actions, Ms. Chilcoat was unlawfully detained, charged with a felony that lacked any legal or factual basis, and incurred substantial legal defense cost obligations in connection therewith.

50.     Ms. Chilcoat also suffered emotional distress and other personal injury from the violation of her personal constitutional rights.

51.     Ms. Chilcoat has been required to retain the services of experienced civil rights attorneys to vindicate these constitutional harms.

## FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 1983 – Defendant Odell)

52.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

53.     42 U.S.C. §1983 provides that: "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person

15

within the jurisdiction thereof to the deprivations of any rights, privileges, or immunities secured by the constitution shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress…"

54.     As described above, Defendant Odell was, at all times relevant hereto, acting under the color of state law in the capacity of agent or officer of, and in concert with, the San Juan County Sheriff's Office.  Odell was also acting as a complaining witness in connection therewith (including with respect to the photographs submitted by Ms. Chilcoat to the BLM if Odell told Laws that they had been altered).

55.     Odell's actions described above deprived Ms. Chilcoat of her rights, privileges and immunities secured by the Fourth and Fourteenth Amendment to the United States Constitution.

56.     Defendant's unlawful misconduct was objectively unreasonable and undertaken intentionally with willful indifference to plaintiff's constitutional rights.

57.     To the extent any of these constitutional deprivations require a showing of specific intent and/or motive, defendant acted intentionally, maliciously, and/or with reckless disregard for the natural and probable consequences of their actions.

58.     Defendant's unlawful actions caused Ms. Chilcoat to incur costs for her criminal defense, including sums already paid and sums she remains obligated to pay.

59.     Plaintiff is further entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

60.    Because the aforesaid actions were done intentionally or committed with reckless or callous disregard for the plaintiff's constitutional rights, plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### (Assault – Defendant Odell)

61.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

62.    Under Utah law, an assault is an act intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such a contact by which the other is put in such imminent apprehension.

63.    As described above, Odell committed such contact, and Ms. Chilcoat was placed in imminent apprehension.

64.    As a result of defendant's assault, Ms. Chilcoat experienced fear, emotional distress, and other non-economic harm, for which she is entitled to recover compensatory damages.

65.    Because the aforesaid actions were done intentionally or committed with reckless or callous disregard for the plaintiff's constitutional rights, plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

### (42 U.S.C. § 1983 – Defendant Laws)

66.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

17

67.     Defendant Laws, acting as a state actor, knowingly and/or recklessly made material factual misrepresentations for the purpose of obtaining a felony criminal charge and bindover against Ms. Chilcoat.  It is a reasonable inference that he did so in retaliation for Ms. Chilcoat's political and environmental views and/or public advocacy in relation to the criminal prosecution of Laws' friend Lyman.

68.     Laws' actions were in violation of Ms. Chilcoat's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

69.     As described above, when Laws made these statements, he was performing the function of a complaining witness, not that of a prosecutor.  Consequently, he is not entitled to claim prosecutorial immunity.

70.     As a result of Laws' unconstitutional actions, plaintiff incurred economic and non-economic harm as described above, including substantial defense fees in the underlying criminal matter that have been paid and/or for which Ms. Chilcoat remains obligated to pay.  Plaintiff is entitled to recover such harm as compensatory damages.

71.     Laws' actions were done intentionally or committed with reckless or callous disregard for the plaintiff's constitutional rights.  Consequently, plaintiff is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

(42 U.S.C. § - Defendant San Juan County)

72.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

18

73.     At the time that Laws made the false factual statements described above, he was acting in the capacity as a final decision-making authority for San Juan County.  Laws was not acting for or on behalf of the State of Utah in his actions as a complaining witness.

74.     As a consequence, San Juan County is liable for the economic and non-economic harm inflicted upon Ms. Chilcoat by Laws' actions.

## PRAYER FOR RELIEF

Plaintiff prays for judgment as to the causes of action set forth above and against defendants as follows:

1.     Non-economic compensatory damages in an amount determined by a jury;

2.     Economic compensatory damages, including legal expenses and costs incurred in defending against the meritless criminal prosecution, in an amount determined by a jury;

3.     With respect to the First, Third, and Fourth Causes of Action, reasonable attorneys' fees, litigation expenses, and costs recoverable as a prevailing party under 42 U.S.C. §1988;

4.     With respect to the First, Second, and Third Causes of Action, punitive damages in an amount to be determined by the jury;

5.     Pre- and post-judgment interest to the fullest extent permitted by law;

6.     Injunctive relief as determined by the Court;

7.     A declaration that the defendants' actions violated Plaintiff's constitutional rights;

8.      All further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**JURY TRIAL DEMANDED**

Plaintiff requests a jury trial on all issues triable under the Seventh Amendment of the United States Constitution.

DATED this 10th day of April, 2019.

/s/ Karra J. Porter
Karra J. Porter
J. D. Lauritzen
Jacob Macfarlane
CHRISTENSEN & JENSEN, P.C.

Patrick A. Shea
PATRICK A. SHEA, P.C.