IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSALIE CHILCOAT, an individual<br><br>Plaintiff,<br>v.<br><br>SAN JUAN COUNTY, a political subdivision of the State of Utah, KENDALL G. LAWS, and ZANE ODELL,<br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT ZANE ODELL'S MOTION TO DISMISS**<br><br>Case No. 4:19-CV-00027-DN-PK<br><br>District Judge David Nuffer |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Zane Odell ("Odell") moves to dismiss Plaintiff Rosalie Chilcoat's ("Chilcoat") complaint for failure to state a claim upon which relief can be granted ("Odell's Motion").[1] Chilcoat alleges sufficient facts to support a claim against Odell as a state actor under 42 U.S.C. § 1983, as well as a claim against him for assault. Odell's Motion is DENIED.

## BACKGROUND[2]

1.  In April of 2017, Odell had a permit to graze cattle on U.S. Bureau of Land Management (BLM) and Utah School and Institutional Trust Land Administration (SITLA) lands in parts of San Juan County.[3]

---

[1] Defendant Zane Odell's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), docket no. 15, filed July 1, 2019; Memorandum in Opposition to Defendant Zane Odell's Motion to Dismiss, docket no. 26, filed July 29, 2019; Defendant Zane Odell's Reply in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), docket no. 28, filed August 12, 2019. Oral argument was heard on October 30, 2019.

[2] The facts set forth below are drawn largely verbatim from the allegations of the Complaint, which are accepted as true for purposes of deciding Odell's Motion.

[3] Complaint and Jury Demand ("Complaint"), ¶ 11 n.1, docket no. 2, filed April 10, 2019.

2. On or about April 1, 2017, Odell called the San Juan County Sheriff's Office to report that someone had shut a gate on a corral that contained a water trough. Odell advised Sheriff's Sgt. Wilcox that, but for a 10-foot gap in the fence, his cattle might have been deprived of water by the gate closure.[4]

3. Sgt. Wilcox came to the scene and the two of them jointly investigated the gate closing. Odell told Sgt. Wilcox that he had a trail camera and showed Wilcox a couple of "fuzzy" images of a trailer and partial license plate.[5]

4. On April 1 or 2, 2017, Odell advised Sgt. Wilcox that he had found the trailer parked at Sand Island Campground. "We got them," he told Wilcox. When Wilcox questioned the campers, he determined that they were an innocent couple from Minnesota.[6]

5. On April 3, 2017, Chilcoat was a passenger in a vehicle traveling on a county road crossing federal and state lands in San Juan County. Odell and two men acting at his instance or direction blocked the car's movement, positioning a truck in front of the car and preventing Chilcoat and the driver (her husband) from leaving.[7]

6. Odell and the other men refused to answer when Chilcoat's husband asked repeatedly why the men were detaining them. Due in part to the size of the men, their refusal to explain their actions, their hostility and threats that Chilcoat would be going to jail, Chilcoat was afraid for her safety.[8]

---

[4] *Id.* ¶ 11.
[5] *Id.* ¶¶ 12, 15.a.
[6] *Id.* ¶ 13.
[7] *Id.* ¶¶ 7-8, 14.
[8] *Id.* ¶¶ 9, 15.e.

7. Odell called San Juan County Sheriff's Office Dispatch to "let them know *we* have the vehicle detained on Lime Ridge that *we* were all looking for."[9]

8. Sheriff's Office Dispatch directed Odell to continue detaining Chilcoat for the sheriff's deputy (Begay).[10]

9. Sheriff's Office Dispatch advised Deputy Begay that Odell and another rancher Zeb Dalton were detaining Chilcoat "for" the deputy.[11]

10. Deputy Begay informed his supervisor, Sgt. Wilcox, that Odell had the people who owned the trailer "detained." Sgt. Wilcox did not express any surprise or dismay, or direct that Chilcoat be released. Instead, he directed Deputy Begay to "get the suspects [sic] information and take a statement."[12]

11. Deputy Begay told Odell, "I'm not going to let them [Chilcoat and her husband] go."[13]

12. After Odell described running to apprehend the car in which Chilcoat was riding, Deputy Begay said, "I'm glad we were able to get them."[14]

13. Odell told Begay, "I want to go as far as absolutely is possible. Because in their little environmental world, in their social media, the rest of them will catch on, maybe. And leave the cowboys alone."[15]

---

[9] *Id.* ¶ 15.c.
[10] *Id.* ¶ 15.f.
[11] *Id.* ¶ 15.g.
[12] *Id.* ¶ 15.h.
[13] *Id.* ¶ 15.j.
[14] *Id.* ¶ 15.k.
[15] *Id.* ¶ 15.l.

14. Prior to charges being filed, Sgt. Wilcox discussed with Odell "the possible charges we were looking at."[16]

## STANDARD OF REVIEW – MOTION TO DISMISS

In order to withstand a motion to dismiss under *Bell Atlantic Corp. v. Twombly*,[17] and *Ashcroft v. Iqbal*,[18] a plaintiff must allege enough facts, "taken as true, to state a claim to relief that is plausible on its face."[19] A plaintiff must "offer specific factual allegations to support each claim."[20] While the Court must "accept as true all of the allegations contained in a complaint" this requirement is "inapplicable to legal conclusions."[21] The determination of plausibility will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[22] Therefore, "in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[23]

---

[16] *Id.* ¶ 15.m.

[17] 550 U.S. 544 (2007).

[18] 556 U.S. 662 (2009).

[19] *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

[20] *Id.*

[21] *Id.* (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

[22] *Id.* (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks omitted).

[23] *Id.*

# DISCUSSION

## First Cause of Action – 42 U.S.C. § 1983

The first issue is whether Chilcoat has alleged sufficient facts to show that Odell acted "under color of [law]," as required for a 1983 claim.[24] Two of the tests for determining whether a private party can be deemed a "state actor" for purposes of section 1983 are the "joint action" and "nexus" tests.[25] The "joint action" test asks "whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."[26] This can be shown where "there is a substantial degree of cooperative action between state and private officials, or if there is overt and significant state participation, in carrying out the deprivation of the plaintiff's constitutional rights . . . ."[27] Similarly, the "nexus" test asks "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."[28] Both of these tests are satisfied here.

The joint action test is met by the allegations that the initial investigations were conducted jointly by Odell and the sheriff's sergeant;[29] that Odell kept Chilcoat detained at the

---

[24] 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .").

[25] *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447-48, 1453-54 (10th Cir. 1995) (citation and quotation marks omitted).

[26] *Id.* at 1447 & 1453 (citations and quotation marks omitted).

[27] *Id.* at 1454 (citations and quotation marks omitted).

[28] *Id.* at 1447-48 (citations and quotation marks omitted).

[29] Complaint, *supra* note 3, ¶¶ 12-13, 15.

direction of dispatch;[30] that the San Juan County officers and Odell repeatedly described their plans and actions using terms such as "we" or acting "for" (meaning "on behalf of");[31] that Odell and the officers discussed potential charges;[32] and that Odell told the officers he wanted the matter to go as far as possible.[33] All of these allegations show plausible concerted action between Odell and the officers.

These same allegations also suffice to meet the nexus test. State action may be supported by allegations showing that the state "has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state."[34] Here, Chilcoat alleges that, after Odell initially detained her, the San Juan County Sheriff's Office Dispatch directed Odell to continue detaining her for Deputy Begay.[35] This direction constitutes "significant encouragement" of the detention, and goes beyond "mere approval of or acquiescence in the initiatives of a private party . . . ."[36]

Chilcoat has sufficiently alleged facts showing encouragement and involvement back and forth between Odell and San Juan County to support a claim against him under 42 U.S.C. § 1983.

---

[30] *Id.* ¶ 15.f.

[31] *Id.* ¶¶ 13, 15.

[32] *Id.* ¶ 15.m.

[33] *Id.* ¶ 15.l.

[34] *Gallagher*, 49 F.3d at 1448 (citations and quotation marks omitted); *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996) (citation and quotation marks omitted).

[35] Complaint, *supra* note 3, ¶¶ 8-10, 15.f.

[36] *Gallagher*, 49 F.3d at 1448.

## Second Cause of Action – Assault

Odell also seeks dismissal of Chilcoat's claim against him for assault.[37] "The gravamen of an assault and battery is the *actor's intention* to inflict injury."[38] Civil assault consists of the following elements: (1) "The defendant acted, intending to cause harmful or offensive contact with the plaintiff, or imminent apprehension of such contact;" (2) "As a result, the plaintiff was thereby put in imminent apprehension of [harmful or offensive contact];" and (3) "The plaintiff suffered injuries proximately caused by the defendant's actions."[39]

Chilcoat alleges that she was traveling on a county road,[40] that Odell and two other men physically blocked the road with their vehicle,[41] refused to explain why they were detaining her and her husband,[42] and told her that she would be going to jail.[43] Chilcoat also alleges that she feared for her safety.[44] Odell's intent to cause this apprehension of an immediate harmful or offensive contact may reasonably be inferred from the acts he is alleged to have taken. "An act is done with the intention of putting the other in apprehension of an immediate harmful or offensive contact if it is done for the purpose of causing such an apprehension *or with knowledge*

---

[37] Odell's Motion, *supra* note 1, at 14-16.

[38] *D.D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 3 (Utah Ct. App. 1994) (emphasis in *DDZ*; citation omitted), declined to follow on other grounds, *Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 521 (Utah 1997).

[39] *Id.* (emphasis and citation omitted).

[40] Complaint, *supra* note 3, ¶ 7.

[41] *Id.* ¶ 8.

[42] *Id.* ¶ 9.

[43] *Id.* ¶ 15.e.

[44] *Id.* ¶ 9.

*that, to a substantial certainty, such apprehension will result.*[45] The assault claim is sufficiently pled.

## ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Odell's Motion to Dismiss[46] is DENIED.

Signed March 27, 2020.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[45] Restatement (Second) of Torts § 21, cmt. d (1965) (emphasis added).

[46] Defendant Zane Odell's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), docket no. 15, filed July 1, 2019.