IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ROSALIE CHILCOAT,<br><br>                    Plaintiff,<br><br>v.<br><br>ZANE ODELL<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING ROSALIE CHILCOAT'S MOTION FOR SUMMARY JUDGMENT** |
| ZANE ODELL,<br><br>          Counterclaim Plaintiff,<br><br>v.<br><br>ROSALIE CHILCOAT AND MARK FRANKLIN<br><br>          Counterclaim Defendants. | Case No. 4:19-cv-00027-DN-PK<br><br>District Judge David Nuffer |

This case arises out of a dispute between a rancher and wilderness advocates. Zane Odell

("Odell"), the rancher, discovered that Mark Franklin ("Franklin") had closed a cattle gate at his

corral in the Spring of 2017, and Odell accused Rosalie Chilcoat ("Chilcoat") and Franklin, her

husband, of trespassing. A state criminal prosecution of Chilcoat and Franklin was dismissed.

Chilcoat then filed this case, alleging claims of civil assault and constitutional violation claims

against Odell.[1] Those claims are now dismissed.

---

[1] Complaint and Jury Demand ¶¶ 8-10, docket no. 2, filed April 10, 2019.

This order deals with Odell's Counterclaim.[2] Odell alleges that Chilcoat and Franklin conspired to commit private and public nuisance in the gate closing incident. Odell also requests injunctive relief.

Chilcoat and Franklin's Motion for Summary Judgment ("Motion")[3] argues that Odell has no evidentiary basis for his claims.[4] Odell responds primarily by pointing to Franklin's plea of no contest in the state criminal prosecution, arguing that Franklin "has already admitted to his injurious and criminal acts."[5]

Because a jury could not reasonably conclude that Chilcoat or Franklin committed or conspired to create or created a private or public nuisance, their Motion[6] is GRANTED.

## Contents

UNDISPUTED FACTS ............................................................................................................. 3
    The Counterclaim .......................................................................................................... 3
    Odell's Deposition ........................................................................................................ 4
    Odell's Disclosures ....................................................................................................... 6
    Odell's Responses to Chilcoat's Discovery ................................................................. 6
    Counterclaim Defendants' Discovery to Odell ............................................................ 7
    Franklin's Deposition Testimony ................................................................................. 7
    Chilcoat's Deposition Testimony ............................................................................... 10
    Franklin's Criminal Case ............................................................................................ 11
STANDARD OF REVIEW ....................................................................................................... 11
    Admissibility of Evidence on Summary Judgment Motion ....................................... 12
DISCUSSION .......................................................................................................................... 12
    Odell's civil conspiracy claim fails because there was no object to be accomplished ..... 13
    Odell's public nuisance claim fails because  there was no unlawful act and no resulting damages ...................................................................................................................... 15
    Odell's private nuisance claim fails because there was no substantial invasion. ............ 16
    Odell fails to demonstrate irreparable harm unless the injunction is issued ................... 17
ORDER ..................................................................................................................................... 19

---

[2] Answer & Counterclaim, docket no. 43, filed November 13, 2019.

[3] Counterclaim Defendant Rosalie Chilcoat's Motion for Summary Judgment ("Motion"), docket no. 67, filed October 15, 2020.

[4] Motion at 10-11.

[5] Odell's Memorandum in Opposition to Chilcoat's Motion for Summary Judgment ("Opposition"), docket no. 92 at 11, filed November 30, 2020.

[6] Docket no. 67, filed October 15, 2020.

## UNDISPUTED FACTS

These undisputed facts were determined by careful examination of Chilcoat and Franklin's Statement of Undisputed Material Facts in their Motion;[7] Odell's Response to Counterclaim Plaintiffs' Statement of Disputed Material Facts in his Opposition;[8] and Chilcoat's Reply to Odell's Response to Mark and Rose's Statement of Facts.[9] Assembly of these undisputed facts also considered Odell's Statement of Additional Material Facts in his Opposition[10] after considering Mark and Rose's Reply to Odell's Additional Facts which was essentially a Motion to Strike.[11]

A key location in these facts is a cattle corral of Mr. Odell's in San Juan County, Utah ("the Corral").

### The Counterclaim

1.      As part of his cattle ranching operation, in the Spring of 2017, Counterclaim Plaintiff Zane Odell had a permit to run cattle on various public lands including U.S. Bureau of Land Management ("BLM") and Utah the School and Institutional Trust Lands Administration ("SITLA") property in an area north of Utah Highway 163, in the Lime Ridge area of San Juan County. The land at issue is known as the Perkins North Allotment.[12]

---

[7] Motion ¶¶ 1-43 at 3-10.

[8] Opposition at 2-9.

[9] Counterclaim Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Reply"), docket no. 95, filed December 14, 2020. at 2-5.

[10] Opposition ¶¶ 1-5 at 9.

[11] Reply at 5-7

[12] *See* Motion ¶ 1 at 3-4, citing Exh. A ¶ 8 at 20 (Odell's Counterclaim).

2.      On the Perkins North Allotment Odell had established and maintained a corral, which contained a watering trough for cattle.[13]

3.      When cows needed access to the water using this trough, Odell chained the gate to the corral open, to ensure that the cattle were not prevented from reaching their water source by the gate closing from wind or otherwise.[14]

4.      Odell's Counterclaim alleges causes of action of (1) Civil Conspiracy, (2) Nuisance, (3) Public Nuisance, and (4) Injunctive Relief.[15]

**Odell's Deposition**

5.      Since he was around ten years old Odell has made a living with either a horse or a cow and has been working with these animals. He has also driven a truck during this time. Odell has operated his cattle business within the last ten years under his name as an individual, not under an LLC or corporation.[16]

6.      Odell has one person who helps him from time to time.[17]

7.      The gate of the corral was 12-14 feet wide.[18]

8.      On April 1, 2017, Odell drove by the corral, early that morning, and saw the gate was open.[19]

---

[13] *Id.* ¶ 2 at 4, citing Exh. A ¶ 9 at 20.

[14] *Id.* ¶ 3 at 4, citing Exh. A ¶ 10 at 20.

[15] *Id.* ¶ 4 at 4, citing Exh. A at 24-29.

[16] *Id.* ¶ 5 at 4, citing Exh. B at 9:16-10:19 (Odell Deposition); see also, Exh. B, at 9:16-10:19."

[17] *Id.* ¶ 6 at 4, citing Exh. B at 10:20-12:10; see also, Motion, Exh. B, at 10:20-12:10."

[18] *Id.* ¶ 7 at 4, citing Exh. B at 19:9-19:18.

[19] *Id.* ¶ 8 at 4, citing Exh. B at 20:8-20:18.

9.	50 yards away from the gate was an open area in the fence that was about 10 feet wide.[20]

10.	On April 1, 2017, in that 10 foot open gap of the fence, there was nothing preventing the cattle from entering or exiting the corral.[21]

11.	On April 1, 2017, Odell returned back to the corral about 6:00 p.m.[22]

12.	The weather on April 1, 2017 was cloudy and rainy.[23]

13.	Odell's game camera photographed Franklin and Chilcoat's camper at the corral on April 1, 2017. The photographs showed a time stamp of 2:40 p.m. and 2:48 p.m., Mountain Daylight Time. However, Odell later indicated that, due to some confusion on setting the clock to daylight savings time, the actual time was 1:40 p.m. and 1:48 p.m.[24]

14.	The sheriff's dispatch call recording dated April 1, 2017 where Odell called San Juan County Sheriff was played at the deposition of Odell which at one point records Odell stating to Sheriff's dispatch: "Now what they don't know, or maybe they figured out too late, we had the fence cut where we were drilling a well. So no harm was done, the cows did go around the corner and get in, to get a drink of water. So I don't have any dead cows."[25]

15.	Odell has not sustained any cash losses as a result of this instance of gate closing. However, Odell has stated that he has suffered damages related to the gate closing such as the

---

[20] *Id.* ¶ 9 at 4-5, citing Exh. B at 21:5-21:118.

[21] *Id.* ¶ 10 at 5, citing Exh. B at 21:12-21:16.

[22] *Id.* ¶ 11 at 5, citing Exh. B at 21:22-22:1.

[23] *Id.* ¶ 12 at 5, citing Exh. B at 22:5-22:10.

[24] *Id.* ¶ 13 at 5, citing Exh. B at 23:25-25:6; *see also* Motion, Exh. B, at 23:25-25:6."

[25] *Id.* ¶ 14 at 5, citing Exh. B at 27:4-28:6.

loss of time and money due to his having to patrol his property, the general wear and tear that comes with patrolling that property, possible devaluation of his allotment, and legal fees.[26]

16.     Odell admitted that due to this gate closing incident, no cattle got sick, no veterinarian bills were incurred, no sale of cattle was affected, and no employees went unpaid.[27]

17.     It was possible to see the 10 foot opening in the fence from the water trough in the corral.[28]

### Odell's Disclosures

18.     On July 16, 2019, Odell made his Initial Disclosures and under Section C., "Damages," stated: "Defendant Odell is not claiming any economic damages at this time but is reserving his right to bring affirmative claims in the future, and to claim his attorneys fees, costs, court fees, pre-judgment and post-judgment interest, and expert witness fees, as allowed by law, and any and all other costs and fees allowed by law."[29]

### Odell's Responses to Chilcoat's Discovery

19.     In Odell's Responses to Counterclaim Defendants' First Set of Written Discovery, Odell responded as follows:

> INTERROGATORY NO. 1: Please describe and/or itemize in reasonable detail any and all damages upon which you base your Counterclaim against Counterclaim Defendants. In so doing, please identify each document(s) supporting such claim, each witness who would testify in support of such, the nature thereof and describe the method by which the damages were calculated.
> Response: Documents responsive to this request have been previously attached to Defendant's Responses to Plaintiff's Interrogatories and

---

[26] *Id.* ¶ 15 at 5, citing Exh. B at 28:8-29:21; *see also* Motion, Exh. B, at 28:8-31:2.

[27] *Id.* ¶ 16 at 5, citing Exh. B at 31:5-31:19.

[28] *Id.* ¶ 17 at 6, citing Exh. B at 89:3-89-17; *see also* Motion, Exh. B, at 88:9-89-17.

[29] *Id.* ¶ 18 at 6, citing Exh. C at 4-5 (Odell's Initial Disclosures).

Requests for Production of Documents and have been sent to Counterclaim Defendants and/or are forthcoming.[30]

**Counterclaim Defendants' Discovery to Odell**

20.    Counterclaim Defendants' First Set of Written Discovery contained a Request for Admission, to which Odell never responded, which states: "REQUEST FOR ADMISSION NO. 1: Admit that you have sustained no damages resulting from the Incident."[31]

**Franklin's Deposition Testimony**

21.    Sometime in the late afternoon of April 1, 2017, before 3:30 p.m., Mark Franklin pulled off of a county road, toward Odell's corral.[32]

22.    Franklin stopped his vehicle on the north side of the corral, near a manhole, near the area where the fence had been peeled back creating an opening in the fence, urinated, then got back in his vehicle and drove toward where the green gate was, the green gate that a few minutes later, he closed. Franklin admits that both he and Chilcoat understand and admit that they knew they were leaving the gate in a locked position and that this was different than how they had found it.[33]

23.    As he reached the gate in his vehicle, Franklin saw there were about 15 cows in the corral, two of which had their heads inside of what he thought was a feed trough, noticing that the cattle were not chewing, he wondered what was in the feed trough.[34]

---

[30] *Id.* ¶ 19 at 6, citing Exh. D at 3 (Odell's Responses to Counterclaim Defendants' First Set of Written Discovery).

[31] *Id.* ¶ 20 at 7, citing Exh. E at 4 (Counterclaim Defendants' First Set of Written Discovery).

[32] *Id.* ¶ 21 at 7, citing Exh. F at 9:15-11:25 (Mark Franklin Deposition); *see also id.*, Exh. F, at 9:15-11:25, 22:4-25:3.

[33] *Id.* ¶ 22 at 7, citing Exh. F at 12:1-12:24.

[34] *Id.* ¶ 23 at 7, citing Exh. F at 15:15-16:14.

24.     Franklin then left his vehicle, walked at a diagonal back to the trough in the corral, and realized it was not a feed trough but rather a water trough.[35]

25.     While at the water trough, Franklin noted that cattle moving through the cut opening in the fence back near the area where he urinated.[36]

26.     Franklin looked up and saw a big white cow with long horns and black stripes at the edge of the fence, walking east. This cow looked at Franklin and gave Franklin the "stink eye." At about this same time, two other cows, further to Franklin's right, were going north along the inside of the corral heading to the back side of Franklin. Franklin felt like he would soon be "surrounded" or cut off from getting to his vehicle.[37]

27.     Franklin later testified that he and Chilcoat have a history of association with the Great Old Broads,[38] a wilderness advocacy organization.[39]

28.     Franklin also stated that they had heard Odell's name before and that Chilcoat had documented land associated with ranchers in that area. Franklin and Chilcoat found Odell's work and activities as a rancher to be worthy of documentation, in part because, in Franklin's mind, Odell had made "big, in your face, ugly scars on the landscape…."[40]

29.     At this point, Franklin walked from the trough to the green gate which was open at the time and pulled the gate toward the closed position which he says was so the cows could not get behind him and he continued to watch the cows.[41]

---

[35] *Id.* ¶ 24 at 7, citing Exh. F at 16:14-16:17.

[36] *Id.* ¶ 25 at 7, citing Exh. F at 17:15-18:7; *see also id.*, Exh. F at 26:7-12.

[37] *Id.* ¶ 26 at 7-8, citing Exh. F at 18:10-19:10.

[38] *Id.*, Exh. F at 8:11-14, 70:23-71:11, 79:2-80:8, 80:21-83:22.

[39] https://www.greatoldbroads.org/ (last visited February 20, 2021).

[40] Motion Exh. F at 8:11-14, 70:23-71, 79:2-80:8.

[41] *Id.* ¶ 27 at 8, citing Exh. F at 20:5-20:25.

30.     Franklin watched cows going out of the open fence on the far corner, cows from pasture were trotting toward the corral, there was a "milling of cows" in front of the open fence in the far corner, he was watching the cows coming and going.[42]

31.     After observing the cows with the gate approximately 90% closed, Franklin pulled the gate to the closed position, stepped outside the corral, and wrapped and secured the chain in the gate latch.[43]

32.     Franklin closed and latched the gate, without thinking about it. Franklin has been around gates and public land "all [his] life" and the gate needed to be closed in his mind, despite the fact he did not own it, despite the fact he did not know who owned it.[44]

33.     Franklin then got in his car. The total amount of time that he spent at the trough, in the corral, and at the gate was about 3-4 minutes total.[45]

34.     Franklin's wife Rose Chilcoat had been in the passenger seat in the car the entire time during Franklin's two exits from the vehicle, one to urinate, and his 2nd exit to observe the trough, corral, and cattle.[46]

35.     As Franklin started the car and began driving away, Chilcoat reminded him that he had just closed a gate, which was open when they arrived. Franklin responded by saying: "It does not matter. The cows are coming and going through that other entrance."[47]

36.     Chilcoat expressed her disagreement with Franklin for his closing of the gate.[48]

---

[42] *Id.* ¶ 28 at 8, citing Exh. F at 21:2-21:18.

[43] *Id.* ¶ 29 at 8, citing Exh. F at 21:19-22:9.

[44] *Id.* ¶ 30 at 8, citing Exh. F at 22:10-24:10.

[45] *Id.* ¶ 31 at 8, citing Exh. F at 25:5-25:12.

[46] *Id.* ¶ 32 at 8, citing Exh. F at 25:3-25:23.

[47] *Id.* ¶ 33 at 8, citing Exh. F at 25:24-26:12.

[48] *Id.* ¶ 34 at 8, citing Exh. F at 29:3-29:16.

37.     Franklin does not dispute the game camera time stamps of his vehicle at 2:40 p.m. and 2:48 p.m.[49]

## Chilcoat's Deposition Testimony

38.     April 1, 2017, Chilcoat was a passenger in a car with her husband Franklin driving when Franklin pulled over to a corral off of a county road. Chilcoat was "peeved" at her husband for doing so because they were late to meet friends to go hiking that afternoon and they had just recently stopped for gas.[50]

39.     Chilcoat had no interest in going to the subject corral that day and so she remained in the vehicle while she checked messages on her cellular telephone.[51]

40.     Franklin got out of the vehicle, relieved himself, and got back in the vehicle after several minutes.[52]

41.     After this, Franklin drove their vehicle to the gate of the corral.[53]

42.     Chilcoat observed Franklin within the corral, observed Franklin approach the tire structure (trough), and then return to the car. However, during most of the time that Franklin was outside the vehicle, she was focused on her cell phone and newspaper.[54]

43.     Before getting back into the vehicle, Franklin pulled the previously open gate shut and latched it.[55]

---

[49] *Id.* ¶ 35 at 8, citing Exh. F at 29:19-31:11.

[50] *Id.* ¶ 36 at 8, citing Exh. G at 9:24-11:7 (Chilcoat Deposition); *see also id.*, Exh. F, at 8:11-14, 70:23-71:11, 79:2-80:8, 80:21-83:22.

[51] *Id.* ¶ 37 at 8, citing Exh. G at 14:12-14:22.

[52] *Id.* ¶ 38 at 8, citing Exh. G at 14:23-15:15.

[53] *Id.* ¶ 39 at 8, citing Exh. G at 15:16- 16:18.

[54] *Id.* ¶ 40 at 8, citing Exh. G at 16:19-17:18.

[55] *Id.* ¶ 41 at 9, citing Exh. G at 17:19-18:15.

44.     After Franklin got into the vehicle, Chilcoat turned to Franklin and asked: "What are you doing? And [Franklin] looked at me startled like, as if he didn't know what I was asking." Chilcoat asked Franklin this question because Franklin shut the gate which had been previously open, and Franklin appeared to be unaware of that fact or his actions closing and latching the gate.[56]

45.     The day that Franklin closed the gate Chilcoat did question his closing of the gate, disapproved of his closing of the gate because there was no reason to do it, normally you do not close a previously open gate, generally speaking, you leave things [gates] as you find them.[57]

**Franklin's Criminal Case**

46.     Franklin entered a plea in abeyance of no contest to two misdemeanor charges or trespassing on public lands and attempted criminal mischief on April 1, 2019.[58]

47.     The events charged allegedly occurred April 1, 2017.[59]

48.     The charges have been dismissed with prejudice.[60]

**STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue

---

[56] *Id.* ¶ 42 at 10, citing Exh. G at 18:16- 19:12.

[57] *Id.* ¶ 43 at 10, citing Exh. G at 22:19-23:7.

[58] Statement in Advance of Plea of No Contest and Order that Pleas be Held in Abeyance, *State of Utah vs. Mark Kevin Franklin*, Case No. 171700040, Utah Seventh Judicial District Court. Attachment A to Opposition.

[59] *Id.*

[60] Docket May 13, 2020, *State of Utah vs. Mark Kevin Franklin*, Case No. 171700040, Utah Seventh Judicial District Court.

[61] Fed. R. Civ. P. 56(a).

11

either way."[62] In determining whether there is a genuine dispute as to material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[63]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[64]

### Admissibility of Evidence on Summary Judgment Motion

"At the summary judgment stage, evidence need not be submitted in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[65] "The requirement is that the party submitting the evidence show that it will be possible to put the information, the substance or content of the evidence, into an admissible form."[66]

### DISCUSSION

Odell claims Chilcoat and Franklin committed civil conspiracy, public nuisance, and private nuisance. Odell has failed to create a disputed issue of material fact to support any of these claims. The gate closing resulted in no harm to Odell's cattle as the 10-foot gap in the fence allowed access to the water. Additionally, the primary and most frequently cited piece of evidence in Odell's Memorandum in Opposition, Franklin's plea of no contest, is inadmissible. For these reasons, Chilcoat's Motion for Summary Judgment is granted.

---

[62] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[63] *Id.*

[64] *Id.* at 670-71.

[65] *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 999 (10th Cir. 2019) (citations and quotation marks omitted).

[66] *Id.* at 999 n.15 (citations and quotation marks omitted).

**Odell's civil conspiracy claim fails because there was no object to be accomplished**

In order to prove civil conspiracy, a plaintiff must show: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof.[67] While Odell may have evidence of the first requirement, Odell fails to demonstrate proof of the remaining elements.

First, there was no object to be accomplished nor a meeting of the minds towards that object. Franklin stopped his vehicle by Odell's corral and urinated.[68] He then closed the gate in front of him.[69] Chilcoat knew nothing about Franklin's purpose for closing the gate; she merely waited in the vehicle while she checked messages on her phone and read the news. Not even Franklin knew why he closed the gate, except that it was a force of habit.[70] No material evidence indicates that these actions were some form of object, goal, or scheme, or that Chilcoat and Franklin had previously discussed that goal.

In arguing of an existence of an object to be accomplished and a meeting of the minds, Odell points out Franklin and Chilcoat's affiliation with the Great Old Broads. He also highlights that Chilcoat and Franklin found Odell's work and activities as a rancher to be worthy of their attention and documentation, in part, because they believed he was guilty of "big, in your face, ugly scars on the landscape…."[71] While these facts may reveal a conceivable motive, they fail to demonstrate that Chilcoat and Franklin had a common goal or object on the day the gate was

---

[67] *See Peterson v. Delta Air Lines*, 2002 UT App 56, ¶ 12, 42 P.3d 1253, 1257 (Utah Ct. App. 2002) (quoting *Alta Indus. v. Hurst*, 846 P.2d 1282, 1290 n.17 (Utah 1993) (citation omitted)).

[68] *See supra*, Undisputed Facts ¶ 22.

[69] *Id.* ¶ 29.

[70] *See* Chilcoat's Motion at 11.

[71] *See id.*, Exh. F, 83:14-22.

closed. Nothing in the facts that shows either Franklin or Chilcoat carrying out or communicating about a plan. Odell's argument merely shows a common interest in protecting the environment.

Second, there was no unlawful, overt act. The unlawful, overt act must be an underlying tort.[72] Odell argues that Franklin has already been prosecuted for criminal acts directed at Odell and has already specifically admitted to those criminal acts. However, these alleged admissions are inadmissible under Fed. R. Evid. Rule 410(a), which prohibits the use of evidence of a guilty plea that was later withdrawn. Additionally, the document has no admissions; but merely recited the elements of the alleged crimes to which Franklin signed his name. Franklin did not specifically give any detail or narrative of those facts. Under the Undisputed Facts on this Motion, Franklin shut a gate to the Corral knowing the cattle were using another entrance. There is no admissible evidence that Franklin or Chilcoat performed an unlawful act.

Third, Odell has failed to prove damages. Throughout the record on this motion, there is no evidence of harm or loss to the Corral or Odell's cattle operation. Odell emphasizes that he did actually assert damages.[73] However, the only evidence he provides is an otherwise unsupported assertion in his deposition that "he has suffered damages related to the gate closing such as the loss of time and money due to his having to patrol his property, the general wear and tear that comes with patrolling that property, possible devaluation of his allotment, and legal fees."[74] These assertions are not enough to prove the damages element. Odell's property interests have not been harmed. There was another opening in the fence, approximately 50 yards from the

---

[72] See *Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024, 1029 (citing *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971 (alteration in original) (quoting *Coroles v. Sabey*, 2003 UT App 339, ¶ 36, 79 P.3d 974)).

[73] Odell's Opposition at 11.

[74] See *id.* at 3; *see also supra*, Undisputed Facts ¶ 15.

gate, through which the cattle were using during the 3-4 hour window when the gate was closed. Thus, Franklin shutting the corral gate did not affect Odell's cattle operation. There was no loss of cattle, no loss of sales, and no effect on Odell's ability to profit from his business.

Odell has had time to provide some form of concrete calculation or production of evidence of damages, yet he has failed to produce such evidence.[75] In his Initial Disclosures, Odell failed to a disclose damage calculation and has made no subsequent disclosures.[76] Odell was also requested to provide evidence of and/or a calculation of his damages, but again Odell failed to provide any evidence or calculation.[77] Odell failed to respond to Request for Admission No. 1, which stated: "Admit you have sustained no damages resulting from the Incident."[78] Fed. R. Civ. P. Rule 36(a)(3) states: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." In his deposition, Odell was asked about damages he had sustained as a result of gate closing incident and Odell admitted he had sustained no monetary damages.[79] There is no evidence of damages.

### Odell's public nuisance claim fails because there was no unlawful act and no resulting damages

In order to prove public nuisance in a private action, a plaintiff must establish: (1) the alleged nuisance consisted of "unlawfully doing any act or omitting to perform any duty;"[80] (2) the "act or omission . . . in any way render[ed] three or more persons insecure in life or the use of

---

[75] FRCP Rule 26(a)(1)(iii) requires every party disclose a computation of each category of damages claimed.

[76] *See supra*, Undisputed Facts ¶ 18.

[77] *Id.* ¶ 19.

[78] *Id.* ¶ 20.

[79] *Id.* ¶¶ 14-16.

[80] Utah Code Ann. § 76-10-803(1).

property;"[81] (3) Odell "suffered damages different from those of society at large;"[82] (4) the defendants caused or are responsible for the nuisance complained of; and (5) the "defendant[s'] conduct was unreasonable."[83] "[P]ublic nuisances are only those occurrences that impact the order and economy of the state or the public at large."[84]

Here, Odell fails to respond to this argument; he only responds to the private nuisance claim. Even so, no juror would find for Odell under public nuisance for several reasons. There was no unlawful act; three or more people were not rendered insecure in life or the use of property; Odell has not suffered any damages at all, let alone damages different from those of society at large. The gate closure has not impacted the interest, order, or economy of the state or the public at large. Thus, Odell's public nuisance claim fails.

**Odell's private nuisance claim fails because there was no substantial invasion.**

To claim private nuisance a plaintiff must show an interference with an individual's use and enjoyment of land.[85] Odell must establish: (1) a substantial invasion in the private use and enjoyment of land, (2) caused by Chilcoat or Franklin, and that (3) "the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable."[86] "Unlike most other torts, [private nuisance law] is not centrally concerned with the nature of the conduct causing the damage, but with the nature and relative importance of the interests interfered with or invaded." Thus, "private nuisance has reference to the interests invaded, to the damage or harm

---

[81] *Id.* § 76-10-803(1)(e).

[82] *Erickson v. Sorensen*, 877 P.2d 144, 148 (Utah Ct. App. 1994) (citations omitted).

[83] *Id.* at 148-49.

[84] *See* Utah Code Ann. § 76-10-803 (2003); *Solar Salt Co. v. Southern Pac. Transp. Co.*, 555 P.2d 286, 289 (Utah 1976) (("To be considered public, the nuisance must affect an interest common to the general public, rather than peculiar to one individual, or several." (internal quotation marks omitted))

[85] W. Page Keeton et al., Prosser on Torts § 87, at 619 (5th ed. 1984).

[86] *Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 21, 190 P.3d 1, 8-9.

inflicted, and not to any particular kind of action or omission which has led to the invasion[.]" In other words, private nuisance liability "is predicated upon unreasonable injury rather than upon unreasonable conduct."[87]

Odell has not presented evidence to satisfy the substantial invasion prong of the test, which looks to damage caused by the nuisance. As discussed in depth above,[88] because there was a hole in the gate, the cattle were not harmed and there were essentially no damages. In fact, at the time of the gate closing, Franklin knew the hole was there.[89] And Odell's unsubstantiated recitation of speculative damages in his deposition is not enough to meet the substantial invasion standard. Even if Odell's list of damages were supported with some evidence, there is nothing substantial about them because the closed gate did not cause any harm to the cattle or Odell's operation.[90]

### Odell fails to demonstrate irreparable harm unless the injunction is issued

The claim for injunctive relief is a request for a remedy, not a separate cause of action.[91] The growing tendency of lawyers to include a separate claim for equitable relief as a cause confusion wrongly suggests that a claim for a remedy can stand alone, apart from any basis for relief. Because all of Odell's claims fail, no injunction will issue.

---

[87] *Branch v. Western Petroleum, Inc.*, 657 P.2d 267, 274 (Utah 1982) (emphasis added) (internal quotation marks omitted); *accord* Restatement (Second) of Torts § 822 cmt. b (1979); *Whaley v. Park City Mun. Corp.*, 2008 UT App 234, ¶ 22, 190 P.3d 1, 8-9.

[88] *See supra* at 14-15 (discussing damages).

[89] *See supra*, Undisputed Facts ¶ 22.

[90] *See id.* ¶¶ 14-16.

[91] *Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1046 (D. Minn. 2013) (citing *Motley v. Homecomings Fin., LLC*, 557 F.Supp.2d 1005, 1014 (D. Minn. 2008). *See also Nationstar Mortg., LLC v. Maplewood Springs Homeowners Ass'n, 238 F. Supp. 3d 1257, 1267 (D. Nev. 2017)* (citing *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed.Appx. 680, 684 (9th Cir. 2014).

To grant a permanent injunction, a district court must find: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing parties; and (4) the injunction, if issued, will not adversely affect the public interest."[92] A permanent injunction cannot be granted if any requirement has not been met. *Id.*

Without a claim, Odell cannot prove success on the merits.

Proving irreparable harm is not "an easy burden to fulfill."[93] Courts do not find harm "irreparable" unless a petitioner can show "a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages."[94] "Purely speculative harm will not suffice, but '[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative and will be held to have satisfied this burden.'"[95] Odell has failed to meet the injunction standard. No irreparable harm will occur if an injunction is not issued. According to the Undisputed Facts, no harm resulted from Franklin's shutting of the gate. Odell's concerns that Chilcoat and Franklin will return to harm Odell or his property are unfounded speculation.[96]

Without a threatened injury the harm that the injunction may cause is unjustified.

An injunction, if issued, would adversely affect the public interest.

---

[92] *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).

[93] *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

[94] *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016).

[95] *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011); *Schell v. OXY USA, Inc.*, 822 F. Supp. 2d 1125, 1142 (D. Kan. 2011) (declining to impose a permanent injunction because "plaintiffs have failed to show that money damages would not be sufficient to compensate any potential future injury" resulting from the defendants' termination of free gas to the plaintiffs)).

[96] *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) ("Purely speculative harm will not suffice.").

## ORDER

IT IS HEREBY ORDERED that Chilcoat's Motion[97] is GRANTED. Odell's claims against Chilcoat and Franklin are DISMISSED with prejudice.

Signed February 23, 2021.

BY THE COURT

David Nuffer
United States District Judge

---

[97] Counterclaim Defendant Rosalie Chilcoat's Motion for Summary Judgment ("Motion"), docket no. 67, filed October 15, 2020.