**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**July 22, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

ROSALIE CHILCOAT, an individual,

    Plaintiff Counter Defendant -
    Appellant,

v.

SAN JUAN COUNTY, a political
subdivision of the state of Utah;
KENDALL G. LAWS,

    Defendants - Appellees,

and

ZANE ODELL,

    Defendant Counterclaimant,

v.

MARK FRANKLIN,

    Counter Defendant.
_____

No. 21-4039

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 4:19-CV-00027-DN)**
_____

Karra J. Porter (Anna P. Christiansen and Amber D. Stargell with her on the briefs),
Christensen & Jensen, P.C., Salt Lake City, Utah, for Plaintiff – Appellant.

R. Blake Hamilton (Ashley M. Gregson and Ryan M. Stephens with him on the brief),
Dentons Durham Jones Pinegar, P.C., Salt Lake City, Utah, for Defendants – Appellees.

_____

Before **CARSON**, **BRISCOE**, and **ROSSMAN**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

Rosalie Chilcoat appeals the district court's orders granting Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and denying leave to amend her complaint under Federal Rule of Civil Procedure 15(a)(2). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the grant of judgment on the pleadings, reverse the denial of leave to amend, and remand for further proceedings.

## BACKGROUND

### I. Underlying Facts[1]

This appeal begins with the closing of a corral gate in San Juan County, Utah. Zane Odell is a cattle rancher. He has a permit to graze his cattle in parts of San Juan

---

[1] The background facts are taken from the well-pleaded allegations in Ms. Chilcoat's complaint. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1247 n.1 (10th Cir. 2019). Like the district court, we also rely on the transcript of the November 2, 2017, preliminary hearing in Ms. Chilcoat's underlying state criminal case because it was a matter of public record, quoted in the complaint, central to Ms. Chilcoat's claims, and the parties did not dispute its authenticity. The transcript is part of the appellate record, and its authenticity has never been questioned on appeal. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) ("[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."); *see also Emps.' Ret. Sys. of Rhode Island v. Williams Cos.*, 889 F.3d 1153, 1158 (10th Cir. 2018) (considering documents on appeal central to plaintiff's claim and of undisputed authenticity).

2

County on land held by the U.S. Bureau of Land Management ("BLM") and the Utah School and Institutional Trust Land Administration. On the morning of April 1, 2017, Mr. Odell left his corral gate open so his cattle could graze on state and federal public land and then return home to get water on his property. That same evening, Mr. Odell noticed that his corral gate had been shut and latched. Mr. Odell called the San Juan County Sheriff's Department and reported the situation, explaining that but for a 10-foot gap in his fence, the closure of the corral gate risked depriving his cattle of water. Sergeant Wilcox came out to investigate. Mr. Odell and Sergeant Wilcox reviewed video footage from Mr. Odell's trail camera. The video showed an SUV towing a trailer come and go near the corral gate. Part of the SUV's license plate number was visible. The SUV belonged to Rosalie Chilcoat and her husband.

Ms. Chilcoat had long been interested in environmental advocacy for public lands in San Juan County. As of April 1, 2017, Ms. Chilcoat belonged to two environmental organizations: The Great Old Broads for Wilderness and Friends of Cedar Mesa. Each group took positions on public land use allegedly opposed by Mr. Odell. Ms. Chilcoat had "documented and reported information to the BLM [about public grazing] and attempted to affect BLM management through proper channels." Aplt. App. vol. 1 at 24. She previously complained to BLM about Mr. Odell's use of public land. Ms. Chilcoat also had publicly supported criminal charges against former San Juan County Commissioner Philip Lyman after he "led a protest ride of off-road vehicles through Recapture Canyon." *Id.* at 27. And when Commissioner Lyman was convicted of federal criminal conspiracy, "Ms. Chilcoat had publicly applauded the

3

conviction in local news media, and [Commissioner] Lyman had publicly blamed Ms. Chilcoat for his criminal conviction." *Id.*

On April 3, 2017, a few days after Mr. Odell reported the gate closure, Ms. Chilcoat and her husband were driving on the county road near Mr. Odell's property. Mr. Odell was out working in his corral and recognized Ms. Chilcoat's SUV from the trail-camera footage. Mr. Odell and two other ranchers caught up to Ms. Chilcoat and her husband and detained them by blocking the public roadway. Mr. Odell called the San Juan County Sheriff's Department and was told Ms. Chilcoat and her husband should not be allowed to leave until the deputy arrived. While waiting for the deputy, Mr. Odell accused Ms. Chilcoat and her husband of criminal activity and threatened them with jail time.

When Deputy Begay arrived, he asked Ms. Chilcoat's husband if he shut Mr. Odell's gate two days earlier. Ms. Chilcoat's husband responded that he had shut the gate but knew Mr. Odell's fence had an opening for the cows to enter the corral. Deputy Begay asked Ms. Chilcoat for her name. She responded with her first name, "Rosalie." Deputy Begay then asked whether her last name was "Franklin," like her husband's. Ms. Chilcoat responded, "Yes."[2] Deputy Begay then told Ms. Chilcoat and her husband they could go.

---

[2] This interaction would later become the basis for charging Ms. Chilcoat with the misdemeanor count of False Personal Information to a Peace Officer.

Two days later, Ms. Chilcoat emailed the local BLM office. The email described the April 3 incident near Mr. Odell's corral and lodged a complaint about Mr. Odell:

> [My husband and I were] accosted by three cowboys (one of whom I believe was Zane O'Dell [sic] and one who I believe was Zeb Dalton and one unknown to me) who physically blocked our vehicle, accused us of criminal activity, threatened us with jail, and prevented our return to the highway. This was a distressing and fearful experience for both of us. My husband was falsely accused of preventing livestock from reaching water. The San Juan County Sheriff was called, responded, spoke with us and cleared us to leave.
>
> As visitors to our public lands who have long been interested in public lands grazing and have documented and reported information to the BLM and attempted to affect BLM management through proper channels, this assault and behavior by BLM permittees is unacceptable. I would like to lodge a complaint and ask that this complaint be included in these permittee[s'] files . . . .

Aplt. App. vol. 1 at 24. Ms. Chilcoat attached a zip file of photographs to her email. The record suggests these photographs depicted ponds on BLM land where Mr. Odell was permitted to graze his cattle. *Id.* at 61-63, 72-73. According to Mr. Odell, Ms. Chilcoat submitted these photographs to BLM to indicate he was violating the scope of his BLM permit. *Id.* at 72-73.

Over the next few days, Ms. Chilcoat's husband made several unsuccessful attempts to reach Sergeant Wilcox about the April 3 incident. On April 7, 2017, Sergeant Wilcox presented information about the April 3 incident to the San Juan County Prosecutor, Kendall Laws. Sergeant Wilcox provided Prosecutor Laws with statements from Mr. Odell and one of the ranchers at the scene on April 3. Sergeant

Wilcox also informed Prosecutor Laws about Ms. Chilcoat's affiliation with the Great Old Broads for Wilderness organization.

On April 11, 2017, Prosecutor Laws charged Ms. Chilcoat with two misdemeanors: Trespassing on Trust Land (Animal Enterprise)[3] and False Personal Information to a Peace Officer.[4] On April 18, Prosecutor Laws escalated the criminal prosecution against Ms. Chilcoat, adding two felony charges: Attempted Wanton Destruction of Livestock (Animal Enterprise)[5] and Retaliation Against a Witness, Victim, or Informant.[6]

Seven months later, the Utah state court held a preliminary hearing to determine whether there was probable cause to support the charges against Ms. Chilcoat. As relevant to this appeal, Prosecutor Laws argued there was probable cause to support the witness retaliation charge because, in her April 5 email to BLM, Ms. Chilcoat had described the April 3 incident as an "assault." The state judge rejected this argument and asked the prosecution if any other evidence supported probable cause. Prosecutor Laws answered affirmatively:

> Yes, Your Honor. So the side that—the other false allegation that is made in the [email] complaint is with regards to the scope of these repairs to ponds and things like that. And there would be sufficient evidence to show that some of the exhibits that were presented to the BLM with that letter were embellished or changed, altered to make those repairs look worse than

---

[3] Utah Code Ann. § 53C-2-301 (West 2020).

[4] Utah Code Ann. § 76-8-507(1) (West 2002).

[5] Utah Code Ann. § 76-6-111(4)(d) (West 2021).

[6] Utah Code Ann. § 76-8-508.3 (West 2004).

they are. So, yeah, if you want to take the assault out, I think there's more
than enough to move forward.

Aplt. App. vol. 1 at 135-36. The judge ruled Ms. Chilcoat would be bound over for

trial on the witness retaliation charge but warned Prosecutor Laws that his theory of

prosecution would be limited to proving her BLM complaint was not made in good

faith.[7] "You said you want to do it and so I'll let you have a crack at [proving the

witness retaliation charge]," the court told Prosecutor Laws, but "the only way you

can proceed on that one is [based on] non-good faith . . . information outside of the

assault, the use of the word assault." *Id.* at 139. According to Ms. Chilcoat, the state

judge found probable cause supported the witness retaliation charge "based solely"

on Prosecutor Laws's representation, which Ms. Chilcoat alleges was false, that she

altered the photographs attached to her April 5 email to BLM. *Id.* at 18.[8]

Ms. Chilcoat's criminal trial was set for May 21, 2018. On April 9,

Ms. Chilcoat filed a motion to "quash the bindover," challenging the state court's

---

[7] In Utah, "[i]f from the evidence the magistrate finds probable cause to
believe that the crime charged has been committed and that the defendant has
committed it, the magistrate must order that the defendant be *bound over* for trial."
Utah R. Crim. P. 7B(b) (emphasis added).

[8] The state judge also concluded probable cause supported the Trespassing on
Trust Land (Animal Enterprise) misdemeanor and the Attempted Wanton Destruction
of Livestock (Animal Enterprise) felony, but the judge refused to bind over
Ms. Chilcoat on the misdemeanor of False Personal Information to a Peace Officer.

probable cause determination.[9] On April 24, the state court denied her motion.[10]

Ms. Chilcoat then sought review in the Utah Court of Appeals. A week later, on May 1, 2018, Prosecutor Laws dropped the witness retaliation charge but continued to pursue the two remaining charges.

Meanwhile, the Utah Court of Appeals stayed Ms. Chilcoat's trial just a few days before it was set to begin and heard oral argument in her appeal. The appellate court directed the parties to file briefs explaining why the state court's probable cause determination should not be summarily reversed.[11] The State of Utah elected not to defend the state court's ruling. On July 19, 2018, the Utah Court of Appeals reversed the state court's probable cause determination, ultimately resulting in the dismissal with prejudice of all remaining criminal charges pending against Ms.

---

[9] *See* Motion to Quash, *State v. Chilcoat*, Nos. 171700040, 17170041 (7th Jud. Dist. Ct. Utah April 9, 2018). We reference filings and orders from the Utah state court and Court of Appeals proceedings because the documents are referenced in the complaint, *Jacobsen*, 287 F.3d at 941; appear in the district court's docket, *Bunn v. Perdue*, 966 F.3d 1094, 1096 n.4 (10th Cir. 2020) ("Some of the relevant . . . filings in district court . . . were not included in the record on appeal, but they are accessible from the district court docket. We may therefore take judicial notice of the filings."); and are publicly filed court records directly relating to this appeal, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

[10] Ruling on Motion to Quash Bindover, *Chilcoat*, Nos. 171700040, 17170041 (filed April 24, 2018).

[11] Order and Sua Sponte Motion for Summary Disposition, *Chilcoat v. State*, No. 20180335-CA (Utah Ct. App. July 10, 2018).

Chilcoat.[12] About a year later, Ms. Chilcoat filed the lawsuit that is the subject of this appeal.

## II.     Procedural History

### A.     *Ms. Chilcoat's original complaint*

On April 10, 2019, Ms. Chilcoat sued Mr. Odell, Prosecutor Laws, and San Juan County in federal district court in Utah, alleging claims under 42 U.S.C. § 1983 against all Defendants and a state-law assault claim against Mr. Odell.[13] Ms. Chilcoat claimed Prosecutor Laws violated her First, Fourth, and Fourteenth Amendment rights when he "knowingly and/or recklessly made material factual misrepresentations" at the preliminary hearing to obtain a bindover on the witness retaliation charge. Aplt. App. vol. 1 at 34. According to Ms. Chilcoat, Prosecutor Laws misrepresented facts in a judicial proceeding when he told the state court "there would be sufficient evidence to show that some of the exhibits that were presented to the BLM with that letter[14] were embellished or changed, altered to make those repairs look worse than they are." *Id.* at 136. Ms. Chilcoat maintained Prosecutor Laws "had

---

[12] Order of Summary Reversal, *Chilcoat*, Case No. 20180335-CA (July 19, 2018); Pretrial Conference/Order of Dismissal, *Chilcoat*, No. 171700041 (Aug. 27, 2018).

[13] Ms. Chilcoat also claimed Mr. Odell violated her Fourth and Fourteenth Amendment rights and was "acting under the color of state law" for § 1983 purposes when he detained Ms. Chilcoat and her husband while waiting for Deputy Begay to arrive. Ms. Chilcoat did not appeal the dismissal of her claims against Mr. Odell.

[14] At the preliminary hearing, Prosecutor Laws referred to Ms. Chilcoat's April 5 email to BLM as a "letter."

no evidence whatsoever[] that Ms. Chilcoat had altered the photographs attached to her April 5 email." *Id.* at 26. Ms. Chilcoat also claimed San Juan County was liable under § 1983 because Prosecutor Laws made the false statements in his capacity as a final policymaker for the County. Ms. Chilcoat sought compensatory damages and injunctive and declaratory relief.

Prosecutor Laws and San Juan County moved for judgment on the pleadings under Rule 12(c). The district court granted Defendants' motion and dismissed Ms. Chilcoat's claims against Prosecutor Laws and San Juan County holding: (1) absolute prosecutorial immunity barred Ms. Chilcoat's claims against Prosecutor Laws in his individual capacity; (2) Eleventh Amendment sovereign immunity barred Ms. Chilcoat's claims against Prosecutor Laws in his official capacity; and (3) Ms. Chilcoat failed to plead a municipal liability claim because Prosecutor Laws acted for the State, not the County.

### B.  *Ms. Chilcoat's proposed amended complaint[15]*

Ms. Chilcoat continued to litigate her remaining claims against Mr. Odell. During discovery, she deposed Commissioner Lyman. In this deposition, Ms. Chilcoat learned about a closed meeting of the San Juan County commissioners. Based on this new information, Ms. Chilcoat moved to amend her complaint under Rule 15(a)(2) to add a new municipal liability claim and reinstate San Juan County as

---

[15] A full discussion of Ms. Chilcoat's proposed amended complaint appears later in our analysis of the district court's denial of leave to amend.

10

a defendant. She also requested additional discovery. The proposed amended complaint alleged the "San Juan County commissioners held a secret, closed meeting in which they discussed . . . the gate incident and Rose Chilcoat specifically," Aplt. App. vol. 2 at 231, and that the commissioners "made an official decision whereby they directed or encouraged a [C]ounty employee to pursue criminal charges against Ms. Chilcoat in retaliation for her political views," *id.* at 232-33. The district court denied Ms. Chilcoat's motion to amend, concluding the proposed amendment was futile.

This timely appeal followed.

## DISCUSSION

Ms. Chilcoat first challenges the district court's order granting judgment on the pleadings. In support of reversal, she argues (1) Prosecutor Laws is not entitled to absolute prosecutorial immunity because he did not function as an advocate at the preliminary hearing; (2) Prosecutor Laws is not entitled to sovereign immunity because he committed an ongoing violation of federal law; and (3) Prosecutor Laws acted on behalf of San Juan County, not the State of Utah, so her municipal liability claim should have been allowed to proceed. We reject each argument in turn and affirm the district court's grant of judgment on the pleadings.

Ms. Chilcoat also contends the district court erred in denying her leave to amend because her proposed amended complaint is not futile under Rule 15(a)(2). We agree, and accordingly reverse and remand on this issue.

11

I.    **The District Court Did Not Err in Granting Defendants' Motion for Judgment on the Pleadings.**

A.    *Standard of review*

We review de novo the grant of judgment on the pleadings under "the standard of review applicable to a Rule 12(b)(6) motion to dismiss." *Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1285-86 (10th Cir. 2011) (citation omitted). Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When assessing plausibility, a plaintiff's allegations are "read in the context of the entire complaint." *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020). Well-pleaded factual allegations are accepted as true and considered in the light most favorable to the plaintiff. *See Tomlinson*, 653 F.3d at 1285-86. "[W]e will uphold the dismissal only if it appears beyond doubt that [plaintiff] can prove no set of facts which would entitle them to relief." *Mink v. Suthers*, 482 F.3d 1244, 1251 (10th Cir. 2007).

B.    *Prosecutor Laws is entitled to absolute prosecutorial immunity because he functioned as an advocate at the preliminary hearing.*

The district court dismissed Ms. Chilcoat's individual-capacity claims against Prosecutor Laws under § 1983 based on the doctrine of absolute prosecutorial immunity. Ms. Chilcoat contends the district court erred because Prosecutor Laws

12

was not functioning as an advocate at the preliminary hearing when he falsely stated

there was probable cause to support the felony charge of witness retaliation.

Reviewing de novo, we discern no error.

"Absolute prosecutorial immunity is a complete bar to a suit for damages

under 42 U.S.C. § 1983." *Mink*, 482 F.3d at 1258 (citing *Imbler v. Pachtman*, 424

U.S. 409, 419 n.13 (1976)). In *Imbler*, the Supreme Court had its "first opportunity to

address the § 1983 liability of a state prosecuting officer." 424 U.S. at 420. Absolute

immunity was recognized for a prosecutor's activities that are "intimately associated with

the judicial phase of the criminal process." *Id.* at 430. Guided by the immunity

historically conferred at common law and the interests behind it, the Court focused on the

adverse impact of unfounded litigation on "the vigorous and fearless performance of the

prosecutor's duty that is essential to the proper functioning of the criminal justice

system." *Id.* at 427-28; *accord Burns v. Reed*, 500 U.S. 478, 492 (1991) (explaining

absolute immunity applies to prosecutors because the "substantial likelihood of vexatious

litigation . . . might have an untoward effect on the independence of the prosecutor").[16]

As *Imbler* and its progeny establish, absolute prosecutorial immunity is intended to

protect the judicial process, not the prosecutor. *See Briscoe v. LaHue*, 460 U.S. 325,

334 (1983) (quoting *Imbler*, 424 U.S. at 439) ("[T]he absolute immunity of public

---

[16] The Supreme Court has consistently "looked to the common law for
guidance in determining the scope of the immunities available in a § 1983 action."
*Rehberg v. Paulk*, 566 U.S. 356, 362-63 (2012). But "in *Imbler*, the Court did not
simply apply the scope of immunity recognized by common-law courts as of 1871
but instead placed substantial reliance on post-1871 cases extending broad immunity
to public prosecutors sued for common-law torts." *Id.* at 366.

prosecutors was 'based on the policy of protecting the judicial process.'"); *Malley v.
Briggs*, 475 U.S. 335, 342 (1986) (explaining absolute immunity is conferred "not from
an exaggerated esteem for those who perform these functions, and certainly not from a
desire to shield abuses of office, but because any lesser degree of immunity could impair
the judicial process itself").[17]

Since *Imbler*, the Supreme Court has prescribed, and we have followed, a
"functional approach" to absolute prosecutorial immunity. *Bledsoe v. Vanderbilt*, 934
F.3d 1112, 1117 (10th Cir. 2019) (quoting *Burns*, 500 U.S. at 478); *see also Briscoe*, 460
U.S. at 342 ("[O]ur cases clearly indicate that immunity analysis rests on functional
categories, not on the status of the defendant."). Under the functional approach, we "look
to which role the prosecutor is performing" at the time of the challenged conduct, *Mink*,
482 F.3d at 1262, and examine "the nature of the function performed, not the identity of
the actor who performed it," *Forrester v. White*, 484 U.S. 219, 229 (1988).

When assessing whether the prosecutor is performing a function "intimately
associated with the judicial phase of the criminal process," *Imbler*, 424 U.S. at 430, we
apply a "'continuum-based approach' and the 'more distant a function is from the judicial
process, the less likely absolute immunity will attach,'" *Mink*, 482 F.3d at 1261 (citation

---

[17] The vital interest in safeguarding the judicial process pervades the Court's
reasoning in *Imbler*. *See* 424 U.S. at 427 ("The ultimate fairness of *the operation of
the system* itself could be weakened by subjecting prosecutors to § 1983 liability.")
(emphasis added); *see id.* ("[T]he alternative of qualifying a prosecutor's immunity
would *disserve the broader public interest*.") (emphasis added); *see id.* at 426
(holding unfounded litigation against prosecutors could have an "adverse effect upon
*the functioning of the criminal justice system*") (emphasis added).

omitted). We begin with an obvious benchmark: a prosecutor is absolutely immune when functioning "within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler*, 424 U.S. at 410. By "initiating and presenting the government's case," the prosecutor is cast in "the role of an advocate." *Mink*, 482 F.3d at 1261. As we have summarized, "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).

"The doctrine of absolute immunity, however, is not without limits." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns*, 500 U.S. at 494. We will not extend absolute immunity when a prosecutor functions "in the role of an administrator or investigative officer rather than that of advocate." *Mink*, 482 F.3d at 1259 (emphasis omitted) (quoting *Imbler*, 424 U.S. at 430-31). The public policy considerations that support the protection of prosecutorial functions are not applicable to investigative and administrative acts. *See Thomas v. Kaven*, 765 F.3d 1183, 1193 (10th Cir. 2014) ("Absolute immunity extends only so far as is necessary to protect the judicial process.").

For example, when a prosecutor conducts investigative work normally performed by the police, they are not performing a prosecutorial function. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993). "Although identifying those acts entitled to

absolute immunity is not always easy, the determinative factor is 'advocacy' because that is the prosecutor's main function . . . ." *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985); *see also Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011) ("The analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate.") (citation omitted)).

In resolving Ms. Chilcoat's appellate claim, our first task is to identify precisely the wrongful act allegedly performed by Prosecutor Laws and to classify that act according to its function. Here, that threshold task is straightforward. As the district court noted, Ms. Chilcoat's claims against San Juan County and Prosecutor Laws "arise out of statements made by [Prosecutor] Laws during a preliminary hearing for the state criminal case." Aplt. App. vol. 1 at 205 n.24. The record supports the conclusion that Ms. Chilcoat's constitutional claims against Prosecutor Laws are based solely on his courtroom conduct. In her complaint, Ms. Chilcoat alleged Prosecutor Laws "knowingly and/or recklessly made material factual misrepresentations for the purpose of obtaining a felony criminal charge and bindover against Ms. Chilcoat" and that he made these misrepresentations "to the court" at the preliminary hearing. *Id.* at 26. Thus, the absolute immunity inquiry here focuses only on statements made by Prosecutor Laws in court at the preliminary hearing.

Using the functional approach,[18] the district court concluded Prosecutor Laws made the allegedly false statements "in his role as an advocate in court." *Id.* at 207. We agree. In Utah, the prosecutor's role at the preliminary hearing is to "present[] evidence sufficient to sustain 'probable cause.'" *State v. Jones*, 2016 UT 4, ¶ 12, 365 P.3d 1212, 1215; Utah Const. art. I, § 12; Utah. R. Crim. P. 7B. There is no serious question that a preliminary hearing is a judicial proceeding in a criminal case. Here, Prosecutor Laws argued at the preliminary hearing that probable cause supported the witness retaliation charge. "It is clear that a prosecutor's courtroom conduct falls on the advocacy side of the line," *Mink*, 482 F.3d at 1261, and a prosecutor's arguments in court are quintessential advocacy—whether at trial, *Imbler*, 424 U.S. at 424, or at a preliminary hearing, *Burns*, 500 U.S. at 487. As the district court correctly observed, courtroom advocacy is an activity "intimately associated with the judicial phase of the criminal process." Aplt. App. vol. 1 at 207 (quoting *Mink*, 482 F.3d at 1259); *see also Samuels v. McDonald*, 723 F. App'x 621, 623 (10th Cir. 2018) ("Prosecutorial immunity covers pretrial advocacy functions, including the preliminary hearing . . . .").

---

[18] Ms. Chilcoat appears to argue the district court erred in its analytical approach to the prosecutorial immunity question. She points to our decision in *Mink*, where we articulated factors to guide the analysis, "such as (1) whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment." 482 F.3d at 1261 (citations omitted). According to Ms. Chilcoat, the district court erred by addressing only the first *Mink* factor. We disagree. *Mink* does not stand for the proposition that a district court errs by failing to consider every articulated factor. As we explain, the district court correctly applied the functional approach in deciding whether Prosecutor Laws was entitled to absolute immunity. Moreover, *Mink* makes clear the particular factors it recites are relevant "especially when considering pre-indictment acts," which are not before us here. *Id.*

Ms. Chilcoat advances several contentions to challenge the conclusion that Prosecutor Laws functioned as an advocate, but none is availing.

First, Ms. Chilcoat insists Prosecutor Laws cannot be shielded by absolute immunity because the statements he made to support a probable cause finding were false. But it is well established that the falsity Ms. Chilcoat alleges here cannot defeat absolute immunity. In *Burns*, a prosecutor presented evidence of a confession at a probable cause hearing without disclosing to the judge that, while the defendant had confessed under hypnosis, she otherwise denied wounding her children. 500 U.S. at 482-83. The Supreme Court determined the prosecutor had functioned as an advocate at the probable-cause hearing and was absolutely immune because, at common law, "prosecutors . . . were absolutely immune from damages liability . . . for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding)." *Id.* at 489-90. The alleged misrepresentations here were made as part of traditional courtroom advocacy during a preliminary hearing; therefore, Prosecutor Laws is entitled to absolute prosecutorial immunity even if the statements were false. *See Buckley*, 509 U.S. at 270 (holding absolute prosecutorial immunity extends to "making false or defamatory statements during, and related to, judicial proceedings"); *see also Becker*, 494 F.3d at 925 ("This immunity applies even if the prosecutor files charges knowing he lacks probable cause.").

Relatedly, Ms. Chilcoat suggests a prosecutor cannot function as an advocate before he has sufficient evidence to support probable cause. This argument also fails. The Supreme Court has held that a prosecutor functions as an advocate when

18

"determin[ing] that the evidence [is] sufficiently strong to justify a probable-cause finding" and during their "presentation of the information and the motion to the court." *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997).

Our decision in *Warnick v. Cooley*, 895 F.3d 746 (10th Cir. 2018), is instructive. There, we considered whether absolute immunity applied "to a prosecutor's decision to file charges if the prosecutor had no probable cause to do so." *Id.* at 752. In affirming the grant of absolute prosecutorial immunity, we focused on the function the prosecutor was performing, not on whether probable cause actually existed:

> It is true that activities undertaken by a prosecutor before probable cause exists often lie outside the purview of a prosecutor's role as an advocate. But while a lack of probable cause is a good clue a prosecutor is engaging in activity beyond the scope of advocacy, it is not determinative. Some functions—like filing charges—are inherently related to a prosecutor's role as an advocate, and therefore protected by absolute immunity whether or not probable cause exists. Hence the well-settled rule that prosecutors are "entitled to absolute immunity for the malicious prosecution of someone whom [they] lacked probable cause to indict."

*Id.* at 752 (internal citation omitted); *accord Buckley*, 509 U.S. at 271 ("[T]he *Imbler* approach focuses on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful."). A prosecutor no doubt functions as an advocate when advancing arguments in court about something as fundamental to the judicial process as the probable cause determination. *See Nielander*, 582 F.3d at 1164 ("Prosecutors are entitled to absolute immunity for . . . their determination of whether probable cause exists.").

To the extent Ms. Chilcoat maintains that, under *Buckley*, Prosecutor Laws is not entitled to absolute immunity because he fabricated evidence, we are not persuaded. In

*Buckley*, the Supreme Court held the prosecutors were not entitled to absolute prosecutorial immunity for their "fabrication of false evidence during the preliminary investigation of an unsolved crime." 509 U.S. at 275. The prosecutors in *Buckley* were working alongside police to fabricate evidence against a suspect before there was probable cause to arrest him. *Id.* at 263-64, 274. Here, Ms. Chilcoat's reliance on *Buckley* is misguided. The alleged false statements were made by Prosecutor Laws at a preliminary hearing after criminal charges were filed against Ms. Chilcoat—not, as in *Buckley*, "during the preliminary investigation of an unsolved crime." *Id.* at 275. Ms. Chilcoat does not allege that Prosecutor Laws engaged in any wrongful conduct outside of the courtroom, and the conduct she does challenge cannot reasonably be described as serving an investigative function.

Finally, Ms. Chilcoat contends Prosecutor Laws is not entitled to absolute prosecutorial immunity because he served as a complaining witness at the preliminary hearing. This argument also fails. "The Supreme Court has held that a complaining witness, as opposed to an official acting in a prosecutorial capacity, is not entitled to absolute immunity." *Thomas*, 765 F.3d at 1192.  A complaining witness historically referred to one who "procured an arrest and initiated a criminal prosecution." *Rehberg*, 566 U.S. at 370 (citing *Kalina*, 522 U.S. at 135); *see also Malley*, 475 U.S. at 340 (A complaining witness "procure[s] the issuance of an arrest warrant by submitting a complaint."); *Wyatt v. Cole*, 504 U.S. 158, 164-65 (1992) (A complaining witness "set[s] the wheels of government in motion by instigating a legal action.").

"[C]omplaining witnesses were not absolutely immune at common law. In 1871, the generally accepted rule was that one who procured the issuance of an arrest warrant by submitting a complaint could be held liable if the complaint was made maliciously and without probable cause." *Malley*, 475 U.S. at 340-41. But the distinctive role played by a complaining witness at common law has generally given way to today's system of public prosecution. The Supreme Court has observed that the mid-19th century practice whereby a complaining witness "procured an arrest and initiated a criminal proceeding," *Rehberg*, 566 U.S. at 370, has been superseded in our contemporary judicial system by a public prosecutor, who "is actually responsible for the decision to prosecute" and "is shielded by absolute immunity," *id.* at 372.

A public prosecutor assumes the role of a complaining witness, and is not entitled to absolute immunity, when personally vouching for the truth of facts that provide the evidentiary basis for a finding of probable cause. *See Kalina*, 522 U.S. at 129-31. In *Kalina*, the prosecutor submitted three documents to the court supporting probable cause, each based on false facts. 522 U.S. at 121. The Supreme Court determined the prosecutor functioned as an advocate when submitting two of the three documents: the unsworn information charging plaintiff with burglary and the unsworn motion for an arrest warrant. *Id.* at 129. The Court reasoned a prosecutor functions as an advocate when "determin[ing] that the evidence [is] sufficiently strong to justify a probable-cause finding" and during their "presentation of the information and the motion to the court." *Id.* at 130.

21

But the Court did not extend absolute immunity for the prosecutor's submission of the third document, a *sworn* probable cause certification for an arrest warrant. *Id.* at 129-31. By submitting the probable cause certification under oath, the prosecutor "personally vouched for the truth of the facts set forth in the certification *under penalty of perjury*." *Id.* at 121 (emphasis added). For that sworn submission, the Court determined the prosecutor functioned not as an advocate but as a complaining witness. *See id.* at 131.

We have likewise observed the distinction between sworn and unsworn statements when deciding whether a prosecutor functioned as an advocate or a complaining witness. *See Nielander*, 582 F.3d at 1164 ("Because [the prosecutor] did not personally vouch for or even list any of the facts in the Complaint/Information, he is entitled to absolute immunity . . . ."); *Mink*, 482 F.3d at 1261 ("[A]ttesting to the accuracy of the facts in the affidavit, the prosecutor [in *Kalina*] was acting as a complaining witness."); *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000) ("[In *Kalina*,] [a]bsolute immunity did not bar . . . an action based on the alleged false statements in the sworn affidavit."). As the Eleventh Circuit has succinctly explained: "The sworn/unsworn distinction is more than critical; it is determinative." *Rivera v. Leal*, 359 F.3d 1350, 1355 (11th Cir. 2004).

Here, the district court concluded that Prosecutor Laws did not function as a complaining witness because he was "not under oath and did not provide any testimony" at the preliminary hearing. Aplt. App. vol. 1 at 206. We agree. The record confirms Prosecutor Laws did not testify in a judicial proceeding. Nor is there any allegation that he personally vouched, under penalty of perjury, for the truth of facts he claimed

22

supported probable cause on the witness retaliation charge. A prosecutor does not function as a complaining witness by presenting mistaken information at a pretrial court appearance. Perhaps Ms. Chilcoat is suggesting Prosecutor Laws was serving as a complaining witness simply by prosecuting her—but that, of course, is a non-starter. Though he initiated the prosecution, and later participated in pretrial judicial proceedings, Prosecutor Laws did not engage in any conduct that placed him in the functional category of a complaining witness. Prosecutor Laws engaged in advocacy, nothing more, and is therefore entitled to absolute prosecutorial immunity.[19]

For these reasons, we affirm the dismissal of Ms. Chilcoat's claims against Prosecutor Laws based on absolute prosecutorial immunity.

## C.      *Prosecutor Laws is entitled to Eleventh Amendment sovereign immunity in his official capacity.*

The district court dismissed Ms. Chilcoat's injunctive and declaratory relief claims against Prosecutor Laws on sovereign immunity grounds. Her injunctive relief claim was dismissed for failure to plead an ongoing violation of federal law under

---

[19] Ms. Chilcoat appears to rely on *Rehberg*, 566 U.S. 356, to argue a "person may serve the function of a complaining witness even if the person does not testify under oath." Aplt. Br. at 13. In *Rehberg*, the Supreme Court held that a witness who testifies during a grand jury proceeding is entitled to the same absolute immunity in a § 1983 action as a witness who testifies at trial. Notably, the *Rehberg* Court observed that testifying, whether before a grand jury or at trial, "was not the distinctive function performed by a complaining witness" at common law. 566 U.S. at 371. Thus, the Court concluded one "who testifies before a grand jury is not at all comparable to a 'complaining witness.'" *Id. Rehberg* does not control our analysis here; as we have explained, *Kalina* does. Under *Kalina* and our cases, a prosecutor does not function as a complaining witness unless they testify at a judicial proceeding or otherwise attest to the truth of facts under oath. Prosecutor Laws did neither.

*Ex parte Young*, and her declaratory relief claim was dismissed because she sought a

declaration that her rights had been violated. On appeal, Ms. Chilcoat challenges the

district court's Eleventh Amendment ruling on two grounds: First, she contends

sovereign immunity is inapplicable because she sued Prosecutor Laws in his

individual capacity. And second, she contends sovereign immunity does not bar her

claims because Prosecutor Laws committed an ongoing violation of federal law by

chilling the exercise of her First Amendment rights. We consider, and reject, each

argument.

Eleventh Amendment sovereign immunity bars suits for money damages

against states, state agencies, and state officers in their official capacities. *See Tarrant*

*Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008); *Couser v. Gay*, 959

F.3d 1018, 1022 (10th Cir. 2020).[20] While sovereign immunity bars damages claims

against state actors in their official capacity, the *Ex parte Young* doctrine provides an

exception for plaintiffs who (1) allege "an ongoing violation of federal law" and

(2) "seek[] relief properly characterized as prospective." *Williams v. Utah Dep't of*

*Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (quoting *Verizon Md. Inc. v. Pub. Serv.*

*Comm'n*, 535 U.S. 635, 645 (2002)). *See generally Ex parte Young*, 209 U.S. 123

---

[20] The district court correctly held Prosecutor Laws acted for the State at the preliminary hearing under section 17-18a-401 of the Utah Code and thus qualified as a State official for the purposes of sovereign immunity. A full discussion of why the district court correctly determined Prosecutor Laws acted for the State, and not for the County, follows in our analysis of Ms. Chilcoat's municipal liability claims against San Juan County.

(1908). *Ex parte Young* applies to both injunctive and declaratory relief. *MCI Telecomms. Corp. v. Pub. Serv. Comm'n*, 216 F.3d 929, 935 (10th Cir. 2000).

Ms. Chilcoat mistakenly contends sovereign immunity is not relevant here because she sued Prosecutor Laws in his individual capacity. This argument misunderstands applicable law. Under § 1983, a plaintiff cannot sue an official in their individual capacity for injunctive or declaratory relief. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."); *see also DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 718 (10th Cir. 1988) ("An action for injunctive relief no matter how it is phrased is against a defendant in official capacity only . . . ."). Ms. Chilcoat alleged claims against Prosecutor Laws, but the complaint did not specify in what capacity. No matter what Ms. Chilcoat may have intended, the law only permits her to sue Prosecutor Laws for injunctive and declaratory relief in his official capacity. Thus the district court did not err by interpreting her prospective relief claims as official-capacity claims.

Ms. Chilcoat next contends the district court erred in dismissing her injunctive relief claim for failure to plead an ongoing violation of federal law under *Ex parte Young*. According to Ms. Chilcoat, Prosecutor Laws committed an ongoing violation because his actions chilled the exercise of her First Amendment rights and she "has an objectively reasonable fear of future prosecution" if she continues to engage in political and environmental advocacy. Aplt. Br. at 25. Defendants respond that the

25

complaint does not allege Prosecutor Laws intends to prosecute Ms. Chilcoat again or

that he "has a pattern of prosecuting [Ms.] Chilcoat when she engages in her

environmental activism or other protected speech." Aplees. Response Br. at 23.

The district court emphasized Ms. Chilcoat's complaint "focuses on [Prosecutor]

Laws' past actions." Aplt. App. vol. 1 at 209. As a result, the district court concluded her

"requests for declaratory and injunctive relief are not tethered to *any* alleged continuing

violations or threatened harm." *Id.* Reviewing de novo, we agree.

Ms. Chilcoat uses the past tense throughout her complaint to describe

Prosecutor Laws' actions: for instance, Prosecutor Laws "*violated* her constitutional

rights," and "*cost* her a substantial amount of money." *Id.* at 19 (emphases added).

The complaint also stated, "Ms. Chilcoat had previously raised issues with the

Bureau of Land Management regarding [Mr.] Odell's use of the land," *id.* at 22, but

Ms. Chilcoat did not allege Prosecutor Laws brought charges against her for these

earlier complaints. On appeal, Ms. Chilcoat argues "an inference can be drawn that

[Ms.] Chilcoat may be subjected to more baseless retaliatory actions by [Prosecutor]

Laws." Aplt. Reply Br. at 14. But Ms. Chilcoat does not plead "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Waller*, 932 F.3d at 1282 (quoting *Iqbal*, 556 U.S. at 678). The

district court committed no error in concluding Ms. Chilcoat's claims for injunctive

relief are barred by sovereign immunity.

Finally, Ms. Chilcoat contends the district court erred by dismissing her

declaratory relief claims. According to Ms. Chilcoat, she is entitled to a declaration

that Prosecutor Laws engaged in conduct that chilled the exercise of her First

Amendment rights. Aplt. Br. at 24. We disagree.

The district court correctly understood the *Ex parte Young* exception applies

only when a plaintiff "seeks relief properly characterized as prospective." *Williams*,

928 F.3d at 1214 (quoting *Verizon Md. Inc.*, 535 U.S. at 645). *Ex parte Young* "may

not be used to obtain a declaration that a state officer has violated a plaintiff's federal

rights in the past." *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019) (quoting

*Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998)). Here,

Ms. Chilcoat sought "[a] declaration that the defendants' actions violated Plaintiff's

constitutional rights." Aplt. App. vol. 1 at 35. This request cannot be properly

characterized as seeking prospective relief; thus, Ms. Chilcoat's declaratory relief

claim necessarily fails to avoid the absolute bar of sovereign immunity.[21]

We affirm the district court's dismissal of Ms. Chilcoat's claims for injunctive

and declaratory relief based on sovereign immunity.

---

[21] Defendants contend we should dismiss Ms. Chilcoat's prospective relief claims because she lacks Article III standing. We need not address this argument. Sovereign immunity, like standing, presents a threshold question of the district court's subject matter jurisdiction. *Williams*, 928 F.3d at 1212 ("[O]nce effectively asserted[,] [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction.") (brackets in original). Because we conclude Ms. Chilcoat's claims do not fall within the *Ex parte Young* exception, we need not also address standing. *See Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012).

### D.   *Ms. Chilcoat fails to state a claim against San Juan County for municipal liability.*

The district court dismissed Ms. Chilcoat's municipal liability claims against San Juan County because Prosecutor Laws "was acting on behalf of the State when prosecuting Chilcoat, not the County." Aplt. App. vol. 1 at 210. Ms. Chilcoat asserts Prosecutor Laws acted as a final policymaker for San Juan County at the preliminary hearing, and the district court erred in concluding otherwise. We reject this argument.

Municipalities can be sued for money damages under § 1983 if a plaintiff alleges a municipal "policy or custom" that directly caused the violation of plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The decision of a municipal employee qualifies as a "policy or custom" if the employee is the final policymaker for the municipality "in a particular area, or on a particular issue." *Couser*, 959 F.3d at 1032 (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)).

For municipal liability, the defendant must be an official policymaker *for the municipality*—not the state. *See McMillian*, 520 U.S. 784-85. Whether an official is a final policymaker for the state or the county depends "on the definition of the official's functions under relevant state law." *Id.* at 786. This analysis demands careful consideration of state law because "an official may be considered a state official for the purpose of one function and a municipal official for another." *Couser*, 959 F.3d at 1025.

Here, the district court correctly looked to Utah law and relied on section 17-18a-401 of the Utah Code to conclude Prosecutor Laws acted for the State. On appeal, Ms. Chilcoat generally contends Prosecutor Laws acted for the County, but she fails to meaningfully challenge the district court's reliance on section 17-18a-401.[22] This statute provides that a public prosecutor "conduct[s], *on behalf of the state*, all prosecutions for a public offense committed within a county." Utah Code Ann. § 17-18a-401 (West 2013) (emphasis added). But a public prosecutor "conduct[s], *on behalf of the county*, all prosecutions for a public offense in violation of a county criminal ordinance." *Id.* (emphasis added). Under Utah law, whether Prosector Laws acted for the state or the county depends on what crime he prosecutes: If the crime violates a county criminal ordinance, then Prosecutor Laws prosecutes on behalf of the county. But if the crime violates the state criminal code, then he prosecutes on behalf of the state.

Prosector Laws made the allegedly false statements while prosecuting Ms. Chilcoat for Retaliation against a Witness, Victim, or Informant—a felony under Utah law.[23] Thus, the district court correctly determined Prosecutor Laws acted on

---

[22] Ms. Chilcoat appears to argue without basis that the district court's conclusion that Prosecutor Laws acted for the State depended on its ruling that Prosecutor Laws functioned as an advocate for purposes of absolute prosecutorial immunity. *See* Aplt. Br. at 25. The analysis of whether Prosecutor Laws acted for the State (for municipal liability) is wholly separate from the analysis of whether he functioned as an advocate (for absolute prosecutorial immunity). The district court properly treated the issues as distinct, and we discern no error.

[23] *See* Utah Code Ann. § 76-8-508.3 (West 2004).

behalf of the State under section 17-18a-401, and on that basis, properly dismissed Ms. Chilcoat's municipal liability claim.

We affirm the district court's order granting Defendants' motion for judgment on the pleadings under Rule 12(c). We turn now to Ms. Chilcoat's challenge to the denial of her motion to amend under Rule 15(a)(2).

## II.     The District Court Erred in Denying Ms. Chilcoat's Motion to Amend.

### A.     Additional background facts[24]

After the district court granted Prosecutor Laws and San Juan County's motion for judgment on the pleadings, Ms. Chilcoat's case proceeded against Mr. Odell. As part of this litigation, Ms. Chilcoat deposed Commissioner Lyman. Ms. Chilcoat then sought leave to amend her complaint under Rule 15(a)(2) to add a municipal liability claim based on new information learned during the Lyman deposition. She also requested additional discovery.

The proposed amended complaint described Ms. Chilcoat's environmental and political advocacy related to public lands and her outspoken views about Mr. Odell and Commissioner Lyman. She had been the former associate director of the organization Great Old Broads for Wilderness and had served on the Board of Directors of Friends of Cedar Mesa at the time of the April 1 incident involving Mr. Odell's gate. Ms. Chilcoat had also previously complained to BLM about Mr. Odell's

---

[24] These facts are taken from the well-pleaded allegations in Ms. Chilcoat's proposed amended complaint.

30

use of public land and had publicly supported criminal charges against Commissioner

Lyman after he "led a protest ride of off-road vehicles through Recapture Canyon,"

Aplt. App. vol. 2 at 239, "an archaeologically sensitive southeastern Utah canyon,"

*id.* at 233. When Commissioner Lyman was convicted of federal criminal conspiracy,

Ms. Chilcoat "publicly applauded [his] conviction in local news media, and

[Commissioner] Lyman . . . publicly blamed Ms. Chilcoat for his criminal

conviction." *Id.* According to Ms. Chilcoat, Commissioner Lyman "made public

statements expressing his support of criminal charges against Ms. Chilcoat." *Id.* at

234. Ms. Chilcoat further alleged Commissioner Lyman and Prosecutor Laws were

friends. *Id.* at 239.

According to the proposed amended complaint, shortly after Ms. Chilcoat and

her husband were detained by Mr. Odell and questioned by Deputy Begay on April 3,

the San Juan County commissioners "held a secret, closed meeting in which they

discussed with San Juan County Sheriff Eldredge the gate incident and Rose Chilcoat

specifically." *Id.* at 231. Attendees at this closed meeting included three County

commissioners—Bruce Adams, Rebecca Bennally, and Philip Lyman. This closed

meeting was "not noticed publicly, not disclosed in any agenda or minutes, and not

recorded." *Id.* And the County never disclosed this meeting to Ms. Chilcoat during

her underlying criminal case or in response to her discovery demands in the civil

case.

Ms. Chilcoat learned of this meeting only because Commissioner Lyman

testified in his deposition that Ms. Chilcoat was "widely known and controversial,

31

and there were some criminal discussions that took place behind closed doors in a closed meeting." *Id.* at 233. According to Ms. Chilcoat, Commissioner Lyman testified the meeting occurred "soon after [Ms. Chilcoat's] vehicle was apprehended [on April 3, 2017]" near Mr. Odell's ranch, "after the sheriff was involved," and "just kind of simultaneously with that whole process [the filing of charges]." *Id.* at 232 (second and third alterations in original). The proposed amended complaint stated, "this secret meeting occurred on or after April 4, 2017," the day after Ms. Chilcoat and her husband were detained by Mr. Odell, "but earlier than April 18, 2017," the day Prosecutor Laws escalated the criminal charges against Ms. Chilcoat. *Id.* at 231.

Ms. Chilcoat also alleged that Sergeant Wilcox, after learning about the closure of Mr. Odell's gate on April 1, told Deputy Begay, "I think all we'd have is probably just trespassing. I don't even think it's criminal trespassing if it wasn't done with malice." *Id.* at 234. Despite Sergeant Wilcox's reservations, County officials filed criminal charges against Ms. Chilcoat. Based on these allegations, Ms. Chilcoat claimed San Juan County was liable under § 1983 because the County commissioners met in a "secret, closed meeting," *id*. at 231, and "made an official decision whereby they directed or encouraged a [C]ounty employee to pursue criminal charges against Ms. Chilcoat in retaliation for her political views," *id*. at 232-33.

The district court denied Ms. Chilcoat's motion to amend under Rule 15(a)(2) on the ground that her proposed amended complaint was futile. Ms. Chilcoat contends the district court erred, and we agree.

### B.      Motion to amend standard

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." Generally, we review a denial of leave to amend for abuse of discretion. *Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020). But a district court may withhold leave to amend if the amendment would be futile. *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009). When a district court denies amendment based on futility, "our review for abuse of discretion includes de novo review of the legal basis for the finding of futility." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1033 (10th Cir. 2020) (citation omitted).

Here, the district court concluded the amendment was futile because the complaint, as amended, failed to state a plausible municipal liability claim. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013); *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."). Because the district court identified failure to state a claim under Rule 12(b)(6) as the ground for the amendment's futility, we review the proposed amended complaint de novo to determine whether it states a plausible municipal liability claim. *Quintana*, 973 F.3d at 1033-34.

In our de novo review, we accept as true the well-pleaded factual allegations in the amended complaint and consider them in the light most favorable to Ms. Chilcoat. *See Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1285-86 (10th Cir. 2011). A claim is plausible when the complaint contains "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019) (citation omitted). When analyzing plausibility, a plaintiff's allegations are "read in the context of the entire complaint." *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020). A plaintiff need only "nudge[]" her claim "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Quintana*, 973 F.3d at 1034 (citation omitted).

### C.  *Ms. Chilcoat's proposed amended complaint is not futile.*

The district court denied leave to amend on futility grounds, concluding the proposed amended complaint "support[ed] only mere speculation or a possibility that San Juan County made a decision to direct or encourage criminal prosecution against Ms. Chilcoat." Aplt. App. vol. 2 at 355. The district court properly engaged in the first step of the futility analysis by identifying the reason the proposed amended complaint could be dismissed. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion."). But as Ms. Chilcoat correctly contends, the district court ultimately reached the wrong conclusion.

The district court accepted the truth of Ms. Chilcoat's allegation that "a meeting [took place] between San Juan County commissioners and Sheriff Eldredge where the commissioners discussed Ms. Chilcoat." Aplt. App. vol. 2 at 355. But the district court

faulted Ms. Chilcoat for failing to allege that "San Juan County made a decision to direct or encourage criminal prosecution against [her]." *Id.* The district court reasoned, "Nothing in the proposed Amended Complaint demonstrates that the meeting included the County's decision or encouragement to pursue criminal charges against Ms. Chilcoat." *Id.*

On appeal, Ms. Chilcoat argues the district court erred in concluding her allegations were "too speculative." Aplt. Br. at 14. According to Ms. Chilcoat, the "temporal proximity" of the meeting to the filing of felony charges and the meeting's secrecy, among other factors, "suggest the [C]ounty commissioners involved themselves in the criminal prosecution of Ms. Chilcoat." Aplt. Br. at 14. We agree. Reading Ms. Chilcoat's allegations in the context of her entire proposed amended complaint, *Ullery*, 949 F.3d at 1288, and considering all factual allegations in the light most favorable to her, *Tomlinson*, 653 F.3d at 1285-86, we conclude Ms. Chilcoat's proposed amended complaint states a plausible municipal liability claim under § 1983 against San Juan County.

### 1. The alleged chronology supports a plausible municipal liability claim.

Ms. Chilcoat contends the district court erred by ignoring the "temporal proximity" of the County commissioners' meeting to the filing of felony charges against Ms. Chilcoat. Aplt. Br. at 14. We agree. The district court neglected to consider that Ms. Chilcoat alleged the secret, closed meeting occurred *after* the incident on April 3

involving Mr. Odell, but *before* Prosecutor Laws escalated her criminal charges on April 18. This chronology is critical to the plausibility analysis.

According to the proposed amended complaint, the San Juan Sheriff's Department did not originally think there was enough evidence to prosecute Ms. Chilcoat for closing Mr. Odell's gate on April 1. Despite this, Prosecutor Laws charged Ms. Chilcoat with two misdemeanors. And seven days after filing misdemeanor charges, Prosecutor Laws escalated Ms. Chilcoat's criminal prosecution by adding two felony charges. During this same seven-day period, the "San Juan County commissioners held a secret, closed meeting in which they discussed . . . the gate incident and Rose Chilcoat specifically." Aplt. App. vol. 2 at 231.

These allegations, accepted as true and viewed in the light most favorable to the plaintiff, support a plausible municipal liability claim against San Juan County and permit the reasonable inference that this secret, closed-door meeting affected the decision to bring criminal charges against Ms. Chilcoat. *See Waller*, 932 F.3d at 1282. We do not know what discovery may bring. But that is not our concern. At the motion to dismiss stage, we are tasked with assessing plausibility, not proof. *See Twombly*, 550 U.S. at 545 ("[Plausibility] simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). The district court should have allowed Ms. Chilcoat to amend her complaint and pursue discovery. *See Quintana*, 973 F.3d at 1034 ("[G]iven the low threshold for amendment

36

and low bar for surviving a motion to dismiss[,] the plaintiffs alleged enough to explore

their *Monell* claim in the discovery process.”).

> **2.      The alleged secrecy of the meeting supports a plausible
> municipal liability claim.**

Ms. Chilcoat further contends the district court erred in concluding her allegations

were “speculative” because the “reason [she] does not have direct evidence of what

happened in the secret meeting is that the participants deliberately chose not to keep any

record of it—even though they were required by law to do so.” Aplt. Br. at 28-29. This

point is well taken. We must assume the truth of Ms. Chilcoat’s allegation that the

meeting occurred in secret. We also accept as true her allegations that no record

exists of this secret meeting and that Defendants disclosed no information about this

meeting to Ms. Chilcoat despite her requests in both the criminal and civil

proceeding. Thus Ms. Chilcoat sufficiently alleged that she had no access to information

about what took place in the closed meeting.

The district court concluded the proposed amended complaint “support[ed]

only mere speculation or a possibility that San Juan County made a decision to direct

or encourage criminal prosecution against Ms. Chilcoat.” Aplt. App. vol. 2 at 355.

Just because Ms. Chilcoat cannot allege, before discovery, precisely what took place

behind closed doors at a secret meeting held by the San Juan County commissioners does

not render her allegations speculative under Rule 12(b)(6). We see no way Ms. Chilcoat *could have* alleged facts about what happened at this secret meeting.[25]

Finally, recall Ms. Chilcoat alleged Commissioner Lyman attended the secret meeting, publicly supported her criminal prosecution, and was friends with Prosecutor Laws, who ultimately filed the criminal charges. While the alleged history of animosity between Commissioner Lyman and Ms. Chilcoat alone cannot satisfy plausibility, these allegations further "nudge[]" her municipal liability claim "across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

Considering the allegations in the entire proposed amended complaint, *Ullery*, 949 F.3d at 1288, and viewing all non-conclusory allegations in the light most favorable to Ms. Chilcoat, we conclude she stated a plausible municipal liability claim against San Juan County.[26] The district court erred by denying her proposed

---

[25] At oral argument, counsel for Defendants likewise could not articulate exactly what more Ms. Chilcoat could or should have pled about this secret meeting to render the municipal liability claim plausible.

[26] The dissent's contrary conclusion is animated by an overly narrow reading of Ms. Chilcoat's proposed amended complaint. In section I.D, we affirmed the dismissal of the municipal liability claim in Ms. Chilcoat's original complaint, holding the district court correctly determined Prosecutor Laws was acting on behalf of the State when he allegedly made false statements during Ms. Chilcoat's felony prosecution. The dissent ignores that Ms. Chilcoat's proposed amended complaint—unlike her correctly dismissed original complaint—does not rest solely on acts taken by Prosecutor Laws on behalf of the State and instead alleges the commissioners inflicted the constitutional injury by "direct[ing] or encourag[ing] a county employee to pursue criminal charges against Ms. Chilcoat in retaliation for her political views." Aplt. App. vol. 2 at 232-33. To be sure, San Juan County is not a final policymaking authority for Utah, and thus could not be liable under a theory of municipal liability solely for the State's prosecution of Ms. Chilcoat by Prosecutor Laws. *See, e.g., Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1170 (10th Cir. 2009). But the

amended complaint as futile under Rule 15(a)(2). *See Quintana*, 973 F.3d at 1034

(quoting *Dias*, 567 F.3d at 1178) ("[G]ranting a motion to dismiss is a harsh remedy

which must be cautiously studied, not only to effectuate the spirit of the liberal rules of

pleading but also to protect the interests of justice.").[27] We therefore reverse the district

court's denial of leave to amend.

---

question of final policymaking authority is not "categorical" or "all or nothing," *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997), and proceeds in a nuanced manner, by "particular area" or "particular issue," *id.* Here, the County commission is both the legislative and executive body in San Juan County. *See* Utah Code. Ann. § 17-52a-201(3) (West 2018); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (plurality opinion) ("No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body—whether or not that body had taken similar action in the past or intended to do so in the future—because even a single decision by such a body unquestionably constitutes an act of official government policy."). And a county attorney wears multiple hats under Utah law: he can act on behalf of the state or on behalf of the county, depending on the circumstances. *See* Utah Code Ann. § 17-18a-401 (West 2013) (describing when public prosecutors prosecute for the state and when they prosecute for the county); Utah Code. Ann. § 17-18a-405 (West 2014) (explaining when public prosecutors may act as civil legal counsel for the state, counties, governmental agencies, or governmental entities); Utah Code Ann. § 17-18a-501 (West 2013) (laying out the duties of a county attorney when acting as civil counsel); Utah Code Ann. § 17-53-101(1)(b) (West 2018) (describing county attorney as a county officer). With this appropriately broader reading of the amended complaint in mind, Ms. Chilcoat's municipal liability claim is facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

[27] Defendants suggest we affirm the district court's denial of leave to amend on alternative grounds of undue delay, undue prejudice, or bad faith. The district court did not pass on these alternative grounds, and we decline to do so for the first time on appeal.

**CONCLUSION**

We **AFFIRM** the district court's order granting Defendants' motion for

judgment on the pleadings, **REVERSE** the district court's denial of leave to amend,

and **REMAND** for further proceedings consistent with this opinion, including to

allow Ms. Chilcoat an opportunity to proceed with discovery, as she requested.

*Chilcoat v. San Juan Cnty.*, 21-4039

**CARSON, J.**, concurring in part and dissenting in part.

The majority concludes that Plaintiff's proposed amended complaint states a plausible municipal liability claim. I disagree.[1] Although I take no issue with the majority's chronology or secrecy analysis, I would affirm the district court's denial of Plaintiff's motion for leave to file an amended complaint because the proposed amended complaint lacks well-pleaded allegations that the county commissioners served as final policymakers. Without those necessary allegations, the proposed amended complaint is futile—as the district court correctly determined.

A municipal liability claim must include factual allegations that a particular municipal custom or policy was the moving force behind a constitutional injury. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). The decision of a municipal employee satisfies this "policy or custom" requirement if the employee serves as a final policymaker for the municipality "in a particular area, or on a particular issue." McMillian v. Monroe Cnty., 520 U.S. 781, 785 (1997).

Plaintiff appeals the district court's conclusion that her proposed amended complaint lacked sufficient allegations to state a municipal liability claim against Defendant San Juan County. In count four of her proposed amended complaint, Plaintiff alleged that "Defendant San Juan County violated [her] constitutional rights when the San Juan County Commission adopted a decision to direct or encourage *the filing of*

---

[1] I join the rest of Judge Rossman's thorough majority opinion.

*felony charges* against Plaintiff in retaliation for her activism." See Aplt. App. Vol. 2 at

246 (emphasis added). Rather than grapple with count four's language, the majority

characterizes Plaintiff's claim based on a portion of the proposed amended complaint's

background section. That portion reads,

> Upon information and belief, San Juan County's commissioners made an
> official decision whereby they directed or encouraged a county employee to
> *pursue criminal charges* against Ms. Chilcoat in retaliation for her political
> views.

Id. at 232–33 (emphasis added). The majority claims this background allegation, when

considered in the context of the entire proposed amended complaint, sufficiently states a

plausible Monell claim against San Juan County.[2]

I agree with the majority that when analyzing plausibility, we read a plaintiff's

allegations "in the context of the entire complaint." Ullery v. Bradley, 949 F.3d 1282,

1288 (10th Cir. 2020). But the majority opinion departs from this well-established

principle. Count Four, by its plain language, necessarily refers to Prosecutor Laws

because he filed the felony charges against Plaintiff. Neither Plaintiff nor the majority

dispute that.[3] And when reading count four alongside the background section the

majority cites, the only reasonable conclusion is that the singular county employee who

---

[2] Either way, the crux of Plaintiff's municipal claim is the same—Plaintiff alleges the
commissioners "directed or encouraged" a county employee to file charges against her.

[3] In the amended complaint, Plaintiff specifies that Prosecutor Laws first charged her
with two misdemeanors and then later added two felony charges. Id. at 236–37. She also
acknowledges that he brought these "charges in the name of the State of Utah." Id. at
236. And the majority notes in its analysis that Prosecutor Laws brought and later
escalated Plaintiff's criminal charges.

2

brought criminal charges was Prosecutor Laws.  Id. at 232–33 ("[T]hey directed or encouraged *a* county employee to pursue criminal charges against Ms. Chilcoat." (emphasis added)).  So in context of the entire proposed amended complaint, Plaintiff claims that the commissioners "directed or encouraged" Prosecutor Laws to file felony charges against her.

Elsewhere in the opinion, the majority determines that Prosecutor Laws acted *on behalf of the state* when he filed these charges—a proposition with which I agree.  Utah Code § 17-18a-401 provides that a public prosecutor "conduct[s], on behalf of the state, all prosecutions for a public offense committed within a county."  So the ultimate question becomes whether Plaintiff plausibly alleges that the county commissioners acted as final policymakers in directing or encouraging the state to pursue criminal charges. She did not.

Nothing in the proposed amended complaint suggests that San Juan County commissioners had final policymaking authority over what charges the state brought. But the majority does not question this missing allegation.  Indeed, the majority fails to analyze the question altogether.  And that's contrary to the law in this circuit—when a county attorney acts on behalf of the state, Monell liability cannot be imposed against the county.  Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan., 582 F.3d 1155, 1170 (10th Cir. 2009) ("[T]he County has no authority over how [the county attorney] exercises his law enforcement duties; his discretionary authority does not derive from Republic County, but from the state . . . . Thus, the county attorney's actions cannot be attributable to the Board of County Commissioners under a municipal liability theory.").

3

Plaintiff's proposed amended complaint facially seeks to impose municipal liability based on the commissioners' conduct—not Prosecutor Laws'. But our case law provides that a county does not have final policymaking authority over how an attorney, acting on behalf of the state, exercises his law enforcement duties. <u>See id</u>. So even if the county commissioners told Prosecutor Laws to file criminal charges, they lacked—as a matter of law—final policymaking authority to issue that directive. For this reason, Plaintiff's proposed amended complaint is futile.

I respectfully dissent.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert                                                  Jane K. Castro
Clerk of Court                                                    Chief Deputy Clerk

July 22, 2022

Ms. Anna P. Christiansen
Ms. Karra J. Porter
Christensen & Jensen
257 East 200 South, Suite 1100
Salt Lake City, UT 84111

   **RE:    21-4039, Chilcoat v. San Juan County, et al**
           Dist/Ag docket: 4:19-CV-00027-DN

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

                                              Sincerely,

                                              Christopher M. Wolpert
                                              Clerk of Court

   cc:    Ashley McIntosh Gregson
          R. Blake Hamilton

   CMW/mlb